David A. HUMPHREYS, Plaintiff,

v.

BELLAIRE CORPORATION, Defendant.

No. C2–88–0252.

United States District Court, S.D. Ohio, E.D.

May 22, 1991.

John Mark Costine, Costine & Costine—2, St. Clairsville, OH, for plaintiff.

David Clinton Crago, Jones, Day, Reavis & Pogue, Columbus, OH, for defendant.

## OPINION AND ORDER

GEORGE C. SMITH, District Judge.

This matter is before the Court pursuant to the motion filed by the defendant on May 1, 1989 for summary judgment pursuant to Rule 56 of the Federal Rules of Civil Procedure. Plaintiff, David A. Humphreys, initiated this action in the Court of Common Pleas of Belmont County, Ohio on January 29, 1988. The action was entirely removed to this Court by virtue of the provisions of 28 U.S.C. § 1441 on February 26, 1988. Plaintiff alleges both a contractual violation and a claim for breach of an oral contract as a result of plaintiff's termination of employment by defendant. Plaintiff also asserts a claim under the provisions of the Employee Retirement Income Security Act (ERISA), as amended, 29 U.S.C.A. § 1001 *et seq.*, alleging an interference with the vesting of plaintiff's pension rights. This Court is given original jurisdiction of this action under the provisions of 28 U.S.C. § 1331 and over plaintiff's ERISA claim pursuant to 29 U.S.C. § 1132(e)(1). For the foregoing reasons, defendants' motion for summary judgment is hereby GRANTED.

## FACTS

Defendant, Bellaire Corporation, is engaged in the mining and sale of coal and the management of coal mines. Plaintiff, David A. Humphreys, was employed in various management positions by Bellaire Corporation and its subsidiaries from June, 1977, until April·of 1987. Plaintiff was hired as an Assistant Superintendent of the Powhatan No. 7 mine operated by North American Coal Corporation's wholly owned

subsidiary, Quarto Mining Company.[1] Plaintiff then held a General Superintendent position which he was demoted from in February of 1983 due to the elimination of a superior's position. In August of 1983 plaintiff became mine manager, a position in which he remained until February of 1987.

Quarto Mining Company was formed to construct the Powhatan No. 4 mine and supply coal to the Sammis No. 7 generating plant operated by Quarto's principal customer, Central Area Power Coordinating Group (CAPCO). CAPCO, a consortium of utility companies, had an option to purchase all of Quarto's stock. This option was assigned to a company in the Spring of 1987 and exercised effective April 10, 1987, severing Bellaire's control over Quarto's operations.

Beginning in approximately 1983, CAPCO advised Bellaire and Quarto that it was dissatisfied with the terms of its contract with Quarto. As a result, Bellaire and Quarto had a series of discussions in which revised proposals were submitted to CAPCO for continued operation of the No. 4 mine by Bellaire.

Robert E. Murray served as Executive Vice President of Coal Operations during this period and subsequently as President of North American Coal Corporation. Mr. Murray held numerous group meetings with management personnel of Quarto and a second subsidiary, NACCO, to keep the employees abreast of negotiations, future prospects for the company and other important developments. Murray stated that when addressing the management team, he attempted to keep them focused on the jobs they were doing and not worrying unnecessarily about their futures. [Murray Depo. at 48].

Plaintiff states that Murray held a meeting in July of 1986 in which Murray allegedly informed the group that the CAPCO contract was "up in the air" and asked the group to continue to make improvements and "concentrate on operation rather than worry about their jobs, since they all had jobs with Bellaire, with no cut in pay, if anything happened to Quarto." (Pl.Depo. 55–56). According to plaintiff's recollection, another meeting was held in August or September of 1986, February of 1987 and March of 1987 at which Murray allegedly issued similar statements. (Pl.Depo. 57–58).

As noted above, CAPCO assigned its option to purchase Quarto stock to Consol. Consol exercised its option and effective April 10, 1987, Consol purchased the stock of Quarto. Murray informed plaintiff on April 4, 7, and 8 that Consol was going to offer him a job and that it was in plaintiff's best interest to take the job, since there was no position for plaintiff at Bellaire or any of Bellaire's subsidiaries. (Pl.Depo. 13; 29). Murray also indicated that plaintiff had allegedly disclosed confidential data to Ohio Edison Company and violated internal purchasing procedures. (Pl.Depo. 12–27). Murray also indicated that due to the alleged disclosure of information, animosity had developed toward plaintiff at the No. 4 mine which was so great that plaintiff could not be transferred to the company's one remaining mine. (Murray Depo. 75). Bellaire sold their last mine in the Spring of 1988. At the present time neither Bellaire nor any of its subsidiaries have any underground mining operations. Plaintiff took a job with Consol as a Technical Assistant to the Vice President of Operations, a position he holds at the present time (Pl.Depo. 11–12).

Plaintiff alleges that in reliance on Murray's statements he remained in Bellaire's employment until April of 1987. Plaintiff also contends that in reliance on Murray's statements, plaintiff signed a long term lease for rental space in the Ohio Valley Mall for a business his wife began, bought a new automobile and purchased a membership in a South Carolina golf club. Plaintiff also states that termination of employment with Bellaire left him two months short of the ten years required for vesting of his pension which plaintiff alleges is in

---

1. A notice of name change was submitted by defendants on November 17, 1988 by which North American Coal Corporation, as previously known, became Bellaire Corporation.

violation of the Employee Retirement Security Act.

Plaintiff is asserting claims of contractual violations, breach of an oral contract, and a violation of the Employee Retirement Income Security Act (ERISA).

## STANDARD OF REVIEW

In considering this motion, the Court is mindful that the standard for summary judgment "mirrors the standard for a directed verdict under [Rule 50(a)], which is that the trial judge must direct a verdict if, under the governing law, there can be but one reasonable conclusion as to the verdict." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986) citing *Brady v. Southern Ry. Co.*, 320 U.S. 476, 479–480, 64 S.Ct. 232, 234, 88 L.Ed. 239 (1943). Thus, the Supreme Court concluded in *Anderson* that a judge considering a motion for summary judgment must "ask himself not whether he thinks the evidence unmistakably favors one side or the other but whether a fair minded jury could return a verdict for the plaintiff on the evidence presented." 477 U.S. at 252, 106 S.Ct. at 2512.

Rule 56(c) of the Federal Rules of Civil Procedure provides in pertinent part:

> The judgment sought shall be rendered forthwith if the pleadings, depositions, answers to interrogatories, and admissions on file together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law.

In essence, the inquiry is whether the evidence presented a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law. *Anderson*, 477 U.S. at 252, 106 S.Ct. at 2512.

Such an inquiry necessarily implicates the evidentiary standard of proof that would apply at the trial on the merits. As a result, the Court must view the evidence presented through the prism of the substantive evidentiary burden. Rule 56(e) therefore requires that the nonmoving party go beyond the pleadings and by their own affidavits, or by the depositions, answers to interrogatories, and admissions on file, designate specific facts showing that there is a genuine issue for trial. *Celotex Corp. v. Catrett*, 477 U.S. 317, 324, 106 S.Ct. 2548, 2553, 91 L.Ed.2d 265 (1986). The plain language of Rule 56(c) mandates the entry of summary judgment, after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish an element essential to that party's case, and on which that party will bear the burden of proof at trial. *Id.* at 322, 106 S.Ct. at 2552.

In *Banks v. Rockwell International N. Am. Aircraft Operations*, 666 F.Supp. 1053 (S.D.Ohio 1987) (J. Graham), this district enunciated the importance of granting summary judgments in appropriate situations by stating that: "Although summary judgment should be cautiously invoked, it is an integral part of the Federal Rules which are designed to secure the just, speedy and inexpensive determination of every action." *Citing, Celotex Corp. v. Catrett*, 477 U.S. at 324, 106 S.Ct. at 2553, (quoting Fed.R.Civ.P. 1); *Anderson*, 477 U.S. at 252, 106 S.Ct. at 2512.

Thus, the mere existence of a scintilla of evidence in support of a plaintiff's claim is insufficient—there must be evidence upon which a jury could reasonably find for the plaintiff. Having discussed the Rule 56 standard of review, the Court now turns to the merits.

## LAW AND ANALYSIS

Plaintiff contends that verbal representations made by a representative of defendant negated his employee-at-will status. Plaintiffs assert that verbal statements of employment for "as long as the plaintiff desired, with no cut in pay" were sufficient to amount to promissory estoppel and a contract which was implied in fact.

Under Ohio law, an employment relationship, absent an agreement to the contrary, is regarded as an employment-at-will which can be terminated at any time by the employer. *Fawcett v. G.C. Murphy & Co.*, 46 Ohio St.2d 245, 348 N.E.2d 144 (1976). The

employment-at-will relationship may be altered by expressed oral and/or written promises, or by the doctrine of promissory estoppel. *Mers v. Dispatch Printing Co.,* 19 Ohio St.3d 100, 483 N.E.2d 150 (1985). In order for a verbal promise to be considered a contract it must be unambiguous, involve a meeting of the minds and be supported by adequate consideration. Promissory estoppel arises when one by his acts, representations, or admissions, or by his silence when he ought to speak out, intentionally or through culpable negligence induces another to believe certain facts to exist, and such other rightfully relies and acts on which belief, so that he will be prejudiced if the former is permitted to deny the existence of such facts. *Hedrick v. Center for Comprehensive Alcoholism Treatment, et al.,* 7 Ohio App.3d 211, 454 N.E.2d 1343 (Hamilton County, 1982), citing *London & Lancashire Indemnity Co. of America v. Fairbanks Steam Shovel Co.,* 112 Ohio St. 136, 147 N.E. 329 (1925). Promissory estoppel is also available to employees who have relied to their detriment on representations by the employer and the employer should have known or reasonably expected its representation(s) to be relied upon by the employee. *Biskupich v. Westbay Manor Nursing Home,* 33 Ohio App.3d 220, 515 N.E.2d 632, 633 (Cuyahoga County, 1986).

Plaintiff has not met his burden to overcome summary judgment showing that he is anything more than an employee-at-will. There is no statement, verbal or written, by which plaintiff may specify a specific term of employment. Alleged promise of job security cannot give rise to promise of employment for a specified term; at most, promises of job security would be equivalent of a promise of employment until retirement or lifetime employment and would not alter at-will status. *Hawley v. Dresser Industries, Inc.,* 737 F.Supp. 445 (S.D. Ohio 1990) (Kinneary, J.) Representations purporting to establish "permanent employment" or "lifetime employment" create merely an indefinite employment relationship terminable at will by either party. *Henkel v. Educational Research Council,* 45 Ohio St.2d 249, 344 N.E.2d 118 (1976).

Both parties to an employment-at-will agreement must expressly agree to modify the employee relationship. *Gambitta v. Fisher Foods, Inc.,* No. 55657, Slip Op., 1988 WL 124986 (Ohio Ct.App.Cuyahoga Cty. Nov. 23, 1988). Plaintiff cannot establish that both parties expressly intended to alter the at-will relationship. By plaintiff's own admissions, plaintiff was free to leave the employment at any time under the contract. (Pl.Depo. 64). This in itself represents that no evidence of a meeting of the mind, was present and supports the existence of an employment-at-will contract.

■ Plaintiff also asserts that his continued work performance constituted the necessary consideration to support an employment contract. The consideration for an employment-at-will contract is the bargained-for exchange of the services of the employee for pay. Further consideration is required to support a promise of indefinite continued employment. *Welser v. General Telephone Co. of Ohio,* No. 9–86–13 Slip Op., 1988 WL 100619 (Ohio Ct.App.Marion Cty. Sept. 20, 1988) (App. 6). Plaintiffs continued employment and work performance constituted the requisite consideration for the funding of a contract for permanent employment. Plaintiff performed no consideration additional to the services incident to the employment-at-will which amounts to an indefinite general hiring terminable at will by either party. Therefore, defendants' summary judgment as it relates to the existence of an implied contract is GRANTED.

■ The Ohio Supreme Court recognized the doctrine of promissory estoppel as an exception to employment-at-will agreements. *Mers v. Dispatch Printing Co.,* 19 Ohio St.3d 100, 483 N.E.2d 150 (1985). Plaintiff contends that his employee-at-will status was altered by promises made to which plaintiff relied to his detriment. Plaintiff states that he made no attempt to seek new employment based upon these statements. The plaintiff has failed to show that he has turned down a more advantageous offer of employment. Plaintiff identified two employment opportuni-

ties that were made available to him. The first never materialized into a job offer and the second was turned down because plaintiff did not wish to take a "step backwards". (Pl.Depo. 30–34, 70). By plaintiff's own admission he had not turned down a job offer in reliance on statements made by representatives of the defendant.

Plaintiff also alleges that he made financial commitments in reliance on the alleged representations. Plaintiff contends that he entered into a seven year lease for a children's clothing store, bought a new automobile, and bought a piece of property and membership in a country club in reliance on defendants' statements. However, plaintiff has failed to present any evidence to suggest that his investment decisions were based in any way on the alleged representations, nor that his alleged reliance was detrimental in any way.

Avoidance of summary judgment on the promissory estoppel claim may be achieved by plaintiff's demonstration that at least genuine issues exist as to whether "(1) a promise was made by the defendant; (2) which the promissor should reasonably expect to induce action or forbearance; (3) which did induce such action or forbearance; and (4) enforcement of the promise if the only way to avoid injustice." *Talley v. Teamsters Local No. 377*, 48 Ohio St.2d 142, 146, 357 N.E.2d 44, 47 (1976). Restatement (second) of Contracts § 90 (1981). In determining what the defendants' representations meant, the Court must ascertain what the promissor should reasonably expect the employee to believe what the promise means. *Mers v. Dispatch Printing Co.*, 19 Ohio St.3d 100, 483 N.E.2d 150 (1985).

The fourth requirement of promissory estoppel, that the enforcement of the promise is the only way to avoid injustice may depend on the reasonableness of the promises is reliance which is normally a question of fact for a jury to decide. *Hawley v. Dresser Industries, Inc.*, 737 F.Supp. 445 (S.D.Ohio 1990) (J. Kinneary). The *Hawley* court held that when a promise is at most one of permanent employment, any reliance on the promise would be unreasonable and thus, the plaintiff's claim was rendered vulnerable to summary judgment.

Courts have held that when an employer promises an employee permanent employment or employment until retirement, any reliance on such promises would be unreasonable. Permanent employment constitutes an at-will employment, *Fallis v. Pendleton Woolen Mills, Inc.*, 866 F.2d 209, 213 (6th Cir.1989). Thus, such reliance is insufficient to meet the requirements of a cause of action in promissory estoppel. *Id.*

Plaintiff contends that defendant promised plaintiff employment for as long as plaintiff wished with no cut in pay. This is permanent employment which is an employment-at-will contract which does not preclude termination. Plaintiff must show reasonable reliance to meet the fourth element of promissory estoppel, that injustice can be avoided only by enforcing the promise. *Hawley supra.* Such representations here are promises of permanent employment. Plaintiff cannot show reasonable reliance. This makes it impossible to meet the elements of promissory estoppel. The issue of actual reliance is immaterial to conclude that defendant must prevail as a matter of law for failure to meet an essential element of a promissory estoppel claim, the requirement that enforcement of the promise is necessary to avoid injustice. *Id.* Summary judgment is appropriate as to the plaintiff's promissory estoppel claim.

No genuine issue of material fact has been demonstrated as to plaintiff's claims for employment contract or promissory estoppel, either stated in his complaint or in his deposition. The plaintiff is an employee-at-will and thus can be terminated at any time by the employer. For these reasons plaintiff's ERISA claims need not be addressed. Defendant is entitled to summary judgment on the issues of promissory estoppel, employment contract and ERISA.

For the foregoing reasons, defendant's motion for summary judgment is hereby GRANTED.

IT IS SO ORDERED.