Michael FRY and Lisa Fry, Husband and Wife, Appellants,

v.

Floyd MOUNT, Individually and as an Officer of Iowa Roto–Cast and Reel–Core, Greg Whalen, Individually and as an Officer of Iowa Roto–Cast and Reel–Core, Iowa Roto–Cast, an Iowa Corporation, and Reel–Core, an Iowa Corporation, Appellees.

No. 95–366.

Supreme Court of Iowa.

Sept. 18, 1996.

Thomas G. Reidel of the Conway and Reidel Law Offices, Muscatine, for appellants.

James U. Mellick, Waukon, and Jeanne K. Johnson, Des Moines, for appellees.

Considered by HARRIS, P.J., and LARSON, LAVORATO, NEUMAN, and TERNUS, JJ.

NEUMAN, Justice.

The question on this appeal is whether plaintiff Michael Fry can prevail, as a matter of law, on a claim of negligent misrepresentation where the damages he seeks stem from termination of his at-will employment with the defendants. We conclude that recognizing such a cause of action in this context would permit a discharged employee to attack, on tort law principles, the very circumstance the employee would be prevented from challenging for breach of implied contract. We therefore vacate a court of appeals decision to the contrary, and affirm the judgment of the district court.

Plaintiff Michael Fry applied for a job as a blow mold operator/trainer for defendant corporations Reel–Core and Iowa Roto–Cast. His experience for the job rested on his nine years of employment with Central Can Company in Muscatine. In a preemployment interview with the corporations' owners, defendants Floyd Mount and Greg Whalen, Fry mentioned that Central Can had a policy of never rehiring an employee who has once quit. So the stability of any future employment was important to him. He and his wife, plaintiff Lisa Fry, also had a handicapped child for whom continuity of health insurance was a concern.

Reel–Core offered Fry the job at an annual salary of $35,000, and he went to work for them. Fry had no written employment agreement with the corporation, nor were any employment manuals or regulations discussed with him. Fry relocated his family from Muscatine to Waukon. The corporation paid $1500 toward moving expenses, and also furnished a trailer to assist in the move.

At the time Fry was hired, Reel–Core had been operational for less than a month. The record reveals that he was the only employee with blow molding experience, and helped train other employees—including the plant manager—in that operation. But within four months the company terminated his employment. According to Fry, Greg Whalen told him that he believed Fry had misrepresented his skills and, furthermore, the fledgling corporation could not afford his salary.[1]

Fry, joined by his wife, sued the defendants for breach of implied contract, negligent misrepresentation, fraudulent misrepresentation, and intentional infliction of emotional distress. Following discovery, the defendants moved for summary judgment, asserting that neither Fry's contract claim nor his tort claims could be sustained as a matter of law. Fry resisted defendants' motion, advancing the following factual allegations to support his claim of misrepresentation related to the preemployment interview:

    a. [The defendants] represented that I had the knowledge and skill that would make me an integral part of the new operation;

    b. They represented to me that my skills would make me indispensable to their operation; and

    c. They represented to me that I would have long-term employment situation [sic] with their organization.

The district court granted defendants' motion for summary judgment, concluding Fry was an at-will employee terminable at any time, and for any reason. The Frys appealed the ruling with respect to the two misrepresentation counts.[2] We transferred the case to the court of appeals.

■ The court of appeals sustained the district court's ruling on the fraudulent misrepresentation claim, but reversed on the negligent misrepresentation count. Relying on the elements of negligent misrepresentation outlined in section 552 of the Restatement (Second) of Torts, the court found a fact question existed concerning Fry's justifiable reliance on defendants' alleged representation that the employment would be long

1. The corporation maintained Fry's health insurance until he secured another job some months later.

2. No appeal was taken from the portion of the ruling that dismissed the implied contract and intentional infliction of emotional distress counts.

term. We granted defendants' application for further review to consider their assertion that the court's application of section 552 created an unprecedented exception to at-will employment and a new legal duty for prospective employers.

I. A grant of summary judgment is entitled to affirmance on appeal

if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law.

Iowa R. Civ. P. 237(c); *Hoffnagle v. McDonald's Corp.,* 522 N.W.2d 808, 811 (Iowa 1994). Our review focuses on whether the movant has met this burden when the record is viewed in the light most favorable to the party opposing the motion. *Hoffnagle,* 522 N.W.2d at 811.

Although we have frequently observed that negligence cases are seldom capable of summary adjudication, "the threshold question in any tort case is whether the defendant owed the plaintiff a duty of care." *Sankey v. Richenberger,* 456 N.W.2d 206, 207 (Iowa 1990). Whether such a duty exists is always a question of law for the court. *Hoffnagle,* 522 N.W.2d at 811.

II. The common law doctrine of employment at will is firmly rooted in Iowa law. *Fogel v. Trustees of Iowa College,* 446 N.W.2d 451, 455 (Iowa 1989). An at-will employee can be discharged from employment at any time, for any lawful reason. *Id.* Our cases have carved out only two narrow exceptions to this doctrine:

(1) when the discharge is in clear violation of a "well-recognized and defined public policy of this State," and (2) when a contract created by an employer's handbook or policy manual guarantees an employee that discharge will occur only for cause or under certain conditions.

*French v. Foods, Inc.,* 495 N.W.2d 768, 770 (Iowa 1993) (citations and quoted authority omitted).

Fry does not seriously contend that his employment with Reel–Core was other than at will. Nor does he claim that either of the recognized exceptions to the doctrine apply. Rather he asserts that his at-will status does not prevent him from maintaining an action for negligent misrepresentation based on statements made to him by Mount and Whalen in his preemployment interview.

Fry's negligent misrepresentation claim rests on section 552 of the Restatement (Second) of Torts. That section states in pertinent part:

One who, in the course of his business, profession or employment, or in any other transaction in which he has a pecuniary interest, supplies false information for the guidance of others in their business transactions, is subject to liability for pecuniary loss caused to them by their justifiable reliance upon the information, if he fails to exercise reasonable care or competence in obtaining or communicating the information.

Restatement (Second) of Torts § 552(1) (1977).

We first recognized the applicability of section 552 in *Ryan v. Kanne,* 170 N.W.2d 395 (Iowa 1969). There we held that an accountant owed a duty of care not only to his own client, but to a limited and foreseeable class of third parties "for whose benefit and guidance the accountant *knows* the information is intended." *Ryan,* 170 N.W.2d at 403. We observed in *Ryan* that the same duty would logically apply to other professional purveyors of information such as abstractors and attorneys. *Id.* at 402. Subsequent decisions applying section 552 have so limited the cause of action for negligent misrepresentation. *See Larsen v. United Fed. Savs. & Loan Ass'n,* 300 N.W.2d 281, 287 (Iowa 1981) (savings and loan company owed duty to home buyer where it assumed responsibility for appraisal); *McCracken v. Edward D. Jones & Co.,* 445 N.W.2d 375, 382 (Iowa App.1989) (investment broker liable for false information supplied to investor).

Where the defendant is not in the business of supplying information, and the parties deal at arm's length in a commercial transaction, our courts have refused to recognize a duty arising under section 552. *See Freeman v. Ernst & Young,* 516 N.W.2d 835, 838 (Iowa

1994) (no liability for representations made by seller pursuant to sale of business); *Haupt v. Miller*, 514 N.W.2d 905, 910 (Iowa 1994) (claim against bank officer involved in arm's-length negotiation of loan guarantee with bank customer not actionable); *Meier v. Alfa–Laval, Inc.*, 454 N.W.2d 576, 581–82 (Iowa 1990) (no cause of action for negligent misrepresentation against seller of retail merchandise); *Greatbatch v. Metropolitan Fed. Bank*, 534 N.W.2d 115, 118 (Iowa App. 1995) (bank not liable where product supplied was loan, not information concerning processing of loan).

The court of appeals recently summarized the nature of the threshold inquiry that must be made to determine whether a duty arises under section 552:

> Although the language of the Restatement (Second) of Torts supports a broad view of the types of business covered by [section 552], our appellate cases reflect a rather narrow scope. One limitation is that the duty to use reasonable care in supplying information applies only to persons engaged in the business or profession of supplying information to others. Without facts to show a person is in the business of supplying information to others, no duty arises.
>
> No clear guideline exists to define whether a party is in the business of supplying information. On one hand, manufacturers and dealers of merchandise have not generally been considered to be in the business of supplying information. Their businesses involve making, selling and servicing products, and any information provided during the course of the business is incidental. Similarly, sellers of a business are not themselves in the business of supplying information. On the other hand, the duty has been readily applied to accountants and investment brokers. These professions directly involve the supply of information.

*Greatbatch*, 534 N.W.2d at 117 (citations and footnote omitted).

To counteract the force of this authority, Fry relies heavily on two recent cases, *Barske v. Rockwell International Corp.*, 514 N.W.2d 917 (Iowa 1994), and *Grahek v. Vol-untary Hospital Cooperative*, 473 N.W.2d 31 (Iowa 1991), both of which mentioned section 552 in the context of employee discharge claims. In neither case, however, was the applicability of section 552 at issue. Leaving open the question of viability of such claims in *Grahek*, we merely held such a cause of action would not be preempted by the Iowa Civil Rights Act. *Grahek*, 473 N.W.2d at 35. In *Barske*, where we reversed a judgment for the employer in an action based on alleged preemployment misrepresentations, our decision turned on the question of whether terms of a collective bargaining agreement preempted the plaintiffs' claim, not whether the claim itself was viable. *Barske*, 514 N.W.2d at 925. As Fry rightly points out, we said in *Barske* that the bargaining agreement gave the employer "no absolute right to escape tort liability for pre-employment misrepresentation." *Id.* The authority supporting that proposition, however, clearly involved "valid promises of permanent employment," a situation not comparable to the record here, and hence not controlling. *See id.* (quoting *Belknap, Inc. v. Hale*, 463 U.S. 491, 500–01, 103 S.Ct. 3172, 3177–78, 77 L.Ed.2d 798, 808 (1983), a preemption case concerning enforcement of promises of permanent employment made to replacements for striking workers).

■ The record before us plainly reveals that Fry and Reel–Core were dealing at arm's length. The relationship was "adversarial" in nature, not advisory. *See Haupt*, 514 N.W.2d at 911 (Ternus, J., dissenting); *Berda v. CBS Inc.*, 800 F.Supp. 1272, 1277 (W.D.Pa.1992) (finding that parties to prehire interview were "operating at arm's length, each with a desire but no need to conclude an employment contract with the other"). Accordingly, Reel–Core owed no duty to Fry under this court's traditional interpretation of section 552. To rule otherwise would permit an at-will employee like Fry to potentially recover in tort on the same factual grounds on which the law would deny him recovery in contract. *See Shelby v. Delta Air Lines, Inc.*, 842 F.Supp. 999, 1015 (N.D.Tenn.1993), *aff'd*, 19 F.3d 1434 (6th Cir. 1994).

■ Viewing the record in a light most favorable to Fry, as we must, we think it apparent that Mount and Whalen did no more than express their expectation that the person hired would enjoy long-term employment. Their representation was made to "sell" Fry on their company, not to guide him with professional employment advice. The tort of negligent misrepresentation simply has no application under these circumstances. The district court properly entered judgment for the defendants as a matter of law.

COURT OF APPEALS DECISION VACATED; DISTRICT COURT JUDGMENT AFFIRMED.