**Ronald Dean SCHOFF, Appellant,**

v.

**COMBINED INSURANCE COMPANY OF AMERICA, Appellee.**

No. 98–14.

Supreme Court of Iowa.

Dec. 22, 1999.

Iris E. Muchmore and Leonard T. Strand of Simmons, Perrine, Albright & Ellwood, P.L.C., Cedar Rapids, for appellant.

Connie Alt and Nancy J. Penner of Shuttleworth & Ingersoll, P.C., Cedar Rapids, for appellee.

Considered by McGIVERIN, C.J., and LARSON, NEUMAN, SNELL, and TERNUS, JJ.

TERNUS, Justice.

Plaintiff, Ronald Dean Schoff, appeals an adverse summary judgment ruling on his claim for damages filed against his former employer, defendant, Combined Insurance Company of America. He asserts the district court erroneously held that he could not base his claim on a theory of promissory estoppel because he was an at-will employee. He also alleges error in the district court's rejection of his theory of negligent training and supervision. We affirm.

I. *Scope of Review.*

Summary judgment under Iowa Rule of Civil Procedure 237(c) is appropriate only when there are no genuine issues of material fact and the moving party is entitled to judgment as a matter of law. *See Phipps v. IASD Health Servs. Corp.,* 558 N.W.2d 198, 201 (Iowa 1997). Accordingly, we examine the record before the district court to determine whether any genuine issue of material fact exists and whether the court correctly applied the law. *See id.* The facts are viewed "in the light most favorable to the party opposing the motion for summary judgment." *Id.*

II. *Background Facts and Proceedings.*

Viewed in a light most favorable to the plaintiff, the record shows the following facts. Prior to his employment by the defendant, Schoff was a sixteen-year employee of MidAmerican Energy Corporation. On February 28, 1996, Schoff interviewed with Michael Hageman, a district manager for Combined. At the time of his interview, Schoff completed a written application for employment. The application stated that bonding by Combined's bonding company was a condition of employment. It also asked about Schoff's criminal history. In response to the question, "Have you ever been convicted of a felony?" Schoff answered, "No." Schoff had, however, been convicted of two serious misdemeanors, and he voluntarily disclosed this fact to Hageman during the interview. Hageman understood that Schoff revealed this information to be sure that Schoff's criminal record would not cause a problem with his potential employment by Combined.

Hageman questioned Schoff about the incident resulting in the convictions, and Schoff answered all of Hageman's questions. Hageman never asked, however, whether Schoff had ever been *charged* with a felony, and Schoff did not volunteer the fact that the original charges resulting in his misdemeanor convictions were felony charges. At the time Hageman interviewed Schoff, Hageman understood that only felony convictions, as opposed to charges, were pertinent to bonding. Therefore, he believed that Schoff's criminal record, which he understood involved only misdemeanor convictions, would not adversely affect Schoff's employment with Combined. When Schoff asked Hageman whether this incident would cause any problem with Schoff's potential employment by Combined, Hageman assured Schoff that "as long as [you] have no felony convictions, [your] criminal record [will] be no problem."

Hageman subsequently offered Schoff a position as a sales representative for Combined. Prior to accepting this offer, Schoff specifically asked Hageman whether his criminal record would have any impact on his employment with Combined. Hageman again assured Schoff that it would not. Hageman also stated that only felony convictions were relevant to employment and bonding decisions. Schoff accepted the position offered by Hageman and terminated his employment with MidAmerican.

Upon acceptance of the job offered by Combined, Schoff was required to apply for fidelity bond coverage. Hageman completed an enrollment form for Schoff, in Schoff's presence, asking Schoff specific questions when the need arose. Hageman did not answer the question, "Have you ever been convicted, sentenced or imprisoned?" He told Schoff that only felony convictions were relevant and, therefore, Hageman simply wrote "N/A" after the question. Schoff signed the form and it was forwarded to the bonding company.

Schoff then entered a training period of several weeks. At the end of this period, he signed an employment contract with Combined. This agreement was on a standard form and explicitly stated that the employment contract was "terminable at will by either party."

Schoff began selling insurance for Combined and proved to be an excellent employee. After only three months on the job, however, he was taken out of the field because his application for a fidelity bond had been denied. Schoff was told that the bonding company refused to issue a bond for him due to his criminal record. Combined asserted that the bonding company denied coverage because Schoff had been charged with two felonies and had failed to disclose the information about his conviction history on the enrollment form. Schoff was subsequently officially terminated from his employment with Combined.

Schoff commenced this suit against Combined, relying on two theories for the recovery of damages. First, he claimed that Combined was "estopped from terminating [him] as a result of the criminal charges which [he] had disclosed during his initial interview with [Combined's representative], and which [the representative] had assured [him] would not adversely affect his employment [with Combined]." In an amended petition, Schoff added a negligence claim, asserting that Combined "was negligent in the training and supervision of its District Manager ... in the performance of his duties to interview and hire employees" and because of this negligence, the plaintiff suffered injury.

The district court granted Combined's motion for summary judgment, concluding that, as a matter of law, the plaintiff was an at-will employee and could be terminated for any lawful reason. Furthermore, the court rejected the plaintiff's negligent training and supervision claim, holding as a matter of law that an employer owes no duty to a prospective employee to appropriately train and supervise its employees responsible for hiring. The plaintiff appeals.

### III. Is the Theory of Promissory Estoppel Available in an At-Will Employment Context?

■ A. *Parties' positions.* The parties appear to agree that Schoff was an at-will employee of Combined. *See generally Foote v. Simmonds Precision Prods. Co.*, 158 Vt. 566, 613 A.2d 1277, 1280 (1992) (holding that even where employment contract has been modified by the law of promissory estoppel, "employees for an indefinite term are still considered at-will employees, who may be discharged for any number of reasons not prohibited by the modifications"). They disagree on whether this at-will relationship could be modified by alleged oral promises made by Combined to Schoff.

The plaintiff contends that the district court erred in holding that the doctrine of promissory estoppel cannot apply in the context of an employment-at-will relationship. He maintains that this theory is just another method of establishing contract rights and, therefore, is not necessarily inconsistent with Iowa's employment-at-will doctrine. In response, Combined argues that the promissory estoppel theory upon which the plaintiff relies should be rejected for the same reasons that our court has previously refused to allow a claim for negligent misrepresentation in the employment-at-will context.

B. *Iowa's employment-at-will doctrine.* Our court has not previously considered the viability of a claim of promissory estoppel arising out of an employment relationship. Therefore, we begin our discussion with a brief review of the status of employment at will in Iowa.

■ In Iowa, employment relationships are presumed to be at will. *See Phipps*, 558 N.W.2d at 202. The modern formulation of employment at will "permits termination at any time for any *lawful* reason, that is, a reason that is not contrary to public policy." *Lockhart v. Cedar Rapids Community Sch. Dist.*, 577 N.W.2d 845, 846 (Iowa 1998). We have recognized, however, that the employer and employee can contractually alter the at-will employment relationship. When an employer's handbook or policy manual guarantees "that discharge will occur 'only for cause or under certain conditions,' " the employer is bound by this guarantee. *Anderson v. Douglas & Lomason Co.*, 540 N.W.2d 277, 283 (Iowa 1995) (quoting *French v. Foods, Inc.*, 495 N.W.2d 768, 770 (Iowa 1993)). Because the plaintiff analogizes his promissory estoppel claim to the contractual alteration of the employment-at-will relationship permitted by our cases, we discuss this contract theory in more detail.

■ Liability of the employer based on promises made in an employee hand-

book is based on the legal theory of unilateral contract. *See id.* at 282 (noting that "employee handbooks that meet the requirements for a unilateral contract" are an exception to the rule that employment relationships are presumed to be at will). "A unilateral contract consists of an offeror making a promise and an offeree rendering some performance as acceptance." *Id.* at 283. Accordingly, an employee who seeks to recover under this theory must show three elements: "(1) the handbook is sufficiently definite in its terms to create an *offer;* (2) the handbook is communicated to and accepted by the employee so as to constitute *acceptance;* and (3) the employee provides *consideration.*" *Id.* With this background, we now turn to the plaintiff's claim.

■■■ B. *Theory of promissory estoppel.* The theory of promissory estoppel allows individuals to be held liable for their promises despite an absence of the consideration typically found in a contract. 4 Samuel Williston, *Williston on Contracts* § 8.4, at 41 (1992). "[C]ourts have applied the principle of estoppel in effect to form a contract, when the promisee suffered detriment in reliance on a ... promise." *Id.; see also Friedman v. BRW, Inc.,* 40 F.3d 293, 296 (8th Cir.1994) (stating that the effect of the doctrine of promissory estoppel "is to imply a contract in law where none exists in fact"); *Miller v. Lawlor,* 245 Iowa 1144, 1152, 66 N.W.2d 267, 272 (1954) (" 'Promissory estoppel' is now a recognized species of consideration."); *Huhtala v. Travelers Ins. Co.,* 401 Mich. 118, 257 N.W.2d 640, 647 n.16 (1977) (stating that in promissory estoppel claims, detrimental reliance on one side will suffice as "consideration").

When this court adopted the doctrine of promissory estoppel, we relied on the principles of law found in the Restatement of Contracts section 90 (1932). *See Miller,* 245 Iowa at 1152–53, 66 N.W.2d at 272–73. Because the Restatement (Second) of Contracts contains a nearly identical statement

of these principles, we quote from the latter Restatement:

> A promise which the promisor should reasonably expect to induce action or forbearance of a definite and substantial character on the part of the promisee or a third person and which does induce such action or forbearance is binding if injustice can be avoided only by enforcement of the promise.

Restatement (Second) of Contracts § 90, at 242 (1981). We have set forth the following elements as essential for recovery under a theory of promissory estoppel: "(1) a clear and definite oral agreement; (2) proof that plaintiff acted to his detriment in reliance thereon; and (3) a finding that the equities entitle the plaintiff to this relief." *Johnson v. Pattison,* 185 N.W.2d 790, 795 (Iowa 1971); *accord National Bank v. Moeller,* 434 N.W.2d 887, 889 (Iowa 1989); *In re Estate of Graham,* 295 N.W.2d 414, 418 (Iowa 1980).

In the *National Bank* case, this court compared and contrasted our decisions in the *Graham, Johnson,* and *Miller* cases with respect to the element of "a clear and definite agreement." *National Bank,* 434 N.W.2d at 889 (discussing *In re Estate of Graham,* 295 N.W.2d at 418–19, *Johnson,* 185 N.W.2d at 795–97, and *Miller,* 245 Iowa at 1151–56, 66 N.W.2d at 272–75). We observed that in the cases in which we found a clear and definite agreement, there was "a clear understanding by the promisor that the promisee was seeking an assurance upon which he could rely and without which he would not act." *Id.* This previously unstated element is consistent with the Restatement's express requirement that "the promisor should reasonably expect [the promise] to induce action or forbearance on the part of the promisee." Restatement (Second) of Contracts § 90, at 242 (1981).

■■■ Given our historical reliance on the Restatement in our formulation of promissory estoppel and in the interest of unequivocally stating the elements of this theory, we conclude it is best to simply

include the promisor's understanding as a separate element, rather than having it subsumed in the clear-and-definite-agreement requirement. Accordingly, we state the elements of promissory estoppel as follows: (1) a clear and definite promise; (2) the promise was made with the promisor's clear understanding that the promisee was seeking an assurance upon which the promisee could rely and without which he would not act; (3) the promisee acted to his substantial detriment in reasonable reliance on the promise; and (4) injustice can be avoided only by enforcement of the promise.[1]

Having reviewed the theory of promissory estoppel, we find little to distinguish it from a unilateral contract claim with respect to its compatibility with employment at will. We certainly cannot reject a promissory estoppel claim simply because it creates an exception or obstacle to the employer's ability to terminate an employee at will for that is precisely the effect of a unilateral contract, a theory we have embraced in the employment-at-will context. Promissory estoppel is simply another theory by which an employer may be held to his promise. The distinction in this theory is that detrimental reliance substitutes for the consideration present under a unilateral contract. We do not find anything in this difference that warrants allowing one theory in the employment-at-will context, but not the other. In conclusion, there is nothing about the employment-at-will relationship itself that precludes reliance on a theory of promissory estoppel.[2]

 We also reject the employer's reliance on our negligent misrepresentation cases as authority for the proposition that the theory of promissory estoppel is incompatible with the employment-at-will doctrine. In holding that a negligent misrepresentation claim was not viable in an

1. Although not of utmost importance, we note that this statement of promissory estoppel is consistent with the formulation of this doctrine in other states. *See, e.g., White v. Roche Biomedical Lab., Inc.,* 807 F.Supp. 1212, 1217 (D.S.C.1992); *Humphreys v. Bellaire Corp.,* 764 F.Supp. 489, 494 (S.D.Ohio 1991); *Vajda v. Arthur Andersen & Co.,* 253 Ill.App.3d 345, 191 Ill.Dec. 965, 624 N.E.2d 1343, 1350 (1993); *Rognlien v. Carter,* 443 N.W.2d 217, 220 (Minn.Ct.App.1989); *see also* 82 Am. Jur.2d *Wrongful Discharge* § 91, at 766–67 (1992).

2. Although states vary in the degree to which they protect the employment-at-will doctrine from any inroads, we have not located any state that has rejected a promissory estoppel theory in the employment-at-will context simply because recognition of the theory would affect the employer's ability to terminate an employee at will. Any limitation or rejection of this doctrine has been based on some deficiency in the employee's proof of the elements of the theory. *See, e.g., Sakelaris v. Rice/Maddox Partnership,* 883 F.Supp. 64, 66 (D.S.C. 1995) (holding that "[r]eliance on a promise consisting solely of at-will employment is unreasonable as a matter of law"); *Redgate v. Fairfield University,* 862 F.Supp. 724, 730 (D.Conn.1994) (holding promises of employment for "ten or twenty years" and "for as long as you want" were "insufficiently prom-

issory and insufficiently definite to justify plaintiff's reliance"); *Duart v. FMC Wyo. Corp.,* 859 F.Supp. 1447, 1462 (D.Wyo.1994) (holding that, although Wyoming law recognizes the doctrine of promissory estoppel as a basis for a claim of wrongful discharge, where the statement made to the plaintiff contained nothing more than promises of at-will employment, plaintiff, without more, cannot establish detrimental reliance); *Lozano v. Marriott Corp.,* 844 F.Supp. 740, 743 (M.D.Fla.1994) (rejecting application of promissory estoppel in this case because the evidence failed to show the clear, convincing and substantial inducement needed to justify application of this principle in the context of at-will employment); *Humphreys,* 764 F.Supp. at 493 (stating that although "employment at-will relationship may be altered by expressed oral and/or written promises, ... [a]lleged promise of job security cannot give rise to promise of employment for a specified term ... and would not alter at-will status"); *Pepsi–Cola Gen. Bottlers, Inc. v. Woods,* 440 N.E.2d 696, 699 (Ind.Ct.App. 1982) (recognizing prospective at-will employee had cause of action for promissory estoppel, but limiting damages to out-of-pocket expenses); *Grouse v. Group Health Plan, Inc.,* 306 N.W.2d 114, 116 (Minn.1981) (recognizing promissory estoppel theory in employment-at-will context, but limiting recovery to reliance damages).

employment-at-will situation, we held that the parties "were dealing at arm's length" and the employment relationship "was 'adversarial' in nature, not advisory." *Fry v. Mount,* 554 N.W.2d 263, 266 (Iowa 1996). Based on these facts, we concluded that the employer owed no duty to the employee "under this court's interpretation of [the Restatement's formulation of the tort of negligent misrepresentation]." *Id.* That interpretation limits the tort of negligent misrepresentation to defendants who are in the business or profession of supplying information, and excludes defendants in an adversarial relationship with the plaintiff. *See Freeman v. Ernst & Young,* 516 N.W.2d 835, 838 (Iowa 1994); *Haupt v. Miller,* 514 N.W.2d 905, 910 (Iowa 1994); *Meier v. Alfa–Laval, Inc.,* 454 N.W.2d 576, 581 (Iowa 1990). Thus, the tort of negligent misrepresentation has no application in an employment relationship, where representations are made to "sell" the company rather than to guide the employee "with professional advice." *Fry,* 554 N.W.2d at 267; *accord Thompson v. City of Des Moines,* 564 N.W.2d 839, 844 (Iowa 1997); *Alderson v. Rockwell Int'l Corp.,* 561 N.W.2d 34, 36 (Iowa 1997).

In contrast to the theory of negligent misrepresentation, the theory of promissory estoppel has not been limited to relationships that are advisory in nature as opposed to adversarial. Therefore, the rationale for denying relief to an at-will employee under a theory of negligent misrepresentation does not apply to the doctrine of promissory estoppel.

Having determined that the employment-at-will relationship of the parties does not bar recovery under a theory of promissory estoppel, we now consider the defendant's alternative argument. The defendant claims that, as a matter of law, the plaintiff cannot prove the elements of promissory estoppel. We begin our discussion with the requirement of a clear and definite promise.

## IV. Does the Record Contain Evidence From Which a Jury Could Find a Clear and Definite Promise?

 Before we discuss the record support for this element of promissory estoppel, we point out that the burden of proof is on the plaintiff to prove an estoppel. *See National Bank,* 434 N.W.2d at 889. In addition, "strict proof of all elements is required." *Id.*

A. *Undisputed facts.* As the facts reviewed above demonstrate, it is undisputed that Schoff was fired because the bonding company refused to issue a bond. In addition, it is uncontroverted in the record that the bonding company refused to issue a bond because Schoff had two felony charges on his record and/or because he did not reveal his criminal record on his bond application. Thus, in order to estop Combined from firing him for these reasons, Schoff must establish a clear and definite promise by Combined that he would not be fired if he failed to qualify for a bond, or that he would be bonded despite his felony charges and/or failure to reveal his criminal record.

It is helpful at this juncture to compare the reasons for Schoff's discharge with the alleged promises made by Combined. Although there are some minor discrepancies between Hageman's and Schoff's recollections of their conversations, the facts viewed most favorably to the plaintiff would support a finding that Hageman told Schoff that Schoff's criminal record would not affect his employment with Combined. In addition, the record would support a finding that Hageman told Schoff that only felony convictions were relevant to employment and bonding decisions. We turn now to whether these statements provide a basis to estop Combined from firing Schoff because he did not qualify for a fidelity bond.

B. *Meaning of terms.* We start our analysis with a discussion of the meaning of the requirement that the plaintiff prove a clear and definite promise. A "promise" is "[a] declaration ... to do or forbear a

certain specific act." *Black's Law Dictionary* 1213 (6th ed.1990). A promise is "clear" when it is easily understood and is not ambiguous. *See Webster's Third New International Dictionary* 419 (unab. ed.1993). A promise is "definite" when the assertion is explicit and without any doubt or tentativeness. *See id.* at 592.

■ C. *Proof of a promise.* Initially, we conclude that any statements made by Hageman that only felony convictions were important do not constitute an assertion that Combined would forbear a certain specific act, namely, discharging Schoff because of his felony charges and/or his failure to be bonded. These statements by Hageman more clearly fall within the common definition of a representation: "a statement ... made to convey a particular view or impression of something with the intention of influencing opinion or action." *Id.* at 1926. Statements that only felony convictions are relevant to employment and bonding decisions are not the equivalent of a declaration that Combined would not fire Schoff because of his felony record. Hageman's statements merely conveyed his *impression* or *understanding* of a certain fact—that only felony convictions were relevant; as a matter of law, these statements do not constitute a promise. *See generally Merrifield v. Troutner,* 269 N.W.2d 136, 137 (Iowa 1978) (distinguishing promissory estoppel, which requires a promise, from equitable estoppel, which is based on a misstatement of fact); 28 Am. Jur.2d *Estoppel and Waiver* § 48, at 658 (1966) ("In order for the doctrine of promissory estoppel to come into effect there must, of course, be a *promise* on which reliance may be based...." (Emphasis added.)).

■ Although this distinction may appear to be a technical one, it is of utmost importance. If we do not make a firm and clear distinction between a promise and a representation, discharged employees could simply characterize negligent misrepresentations as promises and thereby avoid our rule that employees may not recover for negligent misrepresentations made by an employer or potential employer. Consequently, we will not imply a promise from representations made by an employer, but will require strict proof that the defendant promised to do or not to do a specific act, and did not simply state the employer's view or impression of something.

That brings us to the other statement made by Hageman—that Schoff's criminal record would not be a problem. Although we have serious reservations whether this statement constitutes a promise, we need not resolve that issue because any such "promise" was not clear and definite, as we now discuss.

■ D. *Proof that the promise was clear and definite.* Schoff does not claim that he and Hageman ever discussed the felony charges that were filed against Schoff. Indeed, the record is undisputed that Schoff never disclosed this aspect of his criminal record to Hageman. Consequently, any statement that Schoff's "criminal record" would not affect his employment is subject to some ambiguity in that the parties did not have the same knowledge with respect to the nature and extent of Schoff's criminal record. This ambiguity is crucial because Schoff was not fired because of his criminal record in general; he was fired because he could not be bonded. Similarly, he was not denied a bond due to his criminal record in general; rather he was not bonded because he had been charged with felonies and/or had not revealed his criminal record on his bond application. As a matter of law, any "promises" that Schoff's criminal record would not be a problem simply do not clearly and definitely encompass a promise that Schoff's felony charges would not be a problem or that his failure to be bonded would not be a problem. *See Neely v. American Family Mut. Ins. Co.,* 930 F.Supp. 360, 373–75 (N.D.Iowa 1996) (holding, as a matter of law, that assurance by insurance agent that "everything would

be covered" was not sufficiently clear and definite to constitute a promise by insurer that coverage would be provided for executive officers, directors and employees of insured); *Wing v. Anchor Media, Ltd.,* 59 Ohio St.3d 108, 570 N.E.2d 1095, 1098–99 (1991) (holding that promise that employee would have an opportunity to purchase an equity interest in employer was not a promise of continued employment). Therefore, the statement upon which the plaintiff bases his claim does not meet the strict standard required for a clear and definite promise.

E. *Conclusion.* We think the record before us fails to reveal sufficient evidence that Hageman made a clear and definite promise either that Schoff's felony charges and/or his failure to reveal them would not prevent him from being bonded, or that Schoff would not be discharged in the event he was not bonded. Consequently, Combined has shown that there is no genuine issue of material fact with respect to the first element of Schoff's promissory estoppel claim. Therefore, the district court properly granted summary judgment to Combined on Schoff's theory of promissory estoppel.[3]

V. *Did Combined Owe Prospective Employees a Duty to Properly Train and Supervise its Employees?*

 Schoff also sought to recover under a negligence theory, alleging that

Combined breached a duty to properly train and supervise Hageman, its district manager. A duty to conform to a standard of conduct to protect others is a necessary element in every negligence action. *See Van Essen v. McCormick Enterprises Co.,* 599 N.W.2d 716, 718 (Iowa 1999). "Courts look to legislative enactments, prior judicial decisions, and general legal principles as a source for the existence of a duty." *Id.* Because the existence of a duty is a question of law for the courts to resolve, it may appropriately be addressed by way of summary adjudication. *See Fry,* 554 N.W.2d at 265.

Schoff relies on the Restatement (Second) of Agency section 213 (1958) as authority for his claim. That section, dealing with a principal's responsibility for the negligent actions of his agents, states in pertinent part:

A person conducting an activity through servants or other agents is subject to liability for harm resulting from his conduct if he is negligent or reckless:

(a) in giving improper or ambiguous orders or in failing to make proper regulations; or . . . .

(c) in the supervision of the activity . . . .

Restatement (Second) of Agency § 213, at 458 (1958).

In *Godar v. Edwards,* 588 N.W.2d 701 (Iowa 1999), we relied on this Restatement provision in recognizing "a claim by an injured third party for negligent hiring."[4]

A person conducting an activity through servants or other agents is subject to liability for harm resulting from his conduct if he is negligent or reckless:

. . . .

(b) in the employment of improper persons or instrumentalities in work involving risk of harm to others;

(c) in the supervision of the activity; or

(d) in permitting, or failing to prevent, negligent or other tortious conduct by persons, whether or not his servants or agents, upon premises or with instrumentalities under his control.

Restatement (Second) of Agency § 213, at 458 (1958).

---

**3.** Because the plaintiff's claim fails on this basis, it is unnecessary for us to consider Combined's contention that the written employment contract bars Schoff's promissory estoppel claim. *See generally* 28 Am.Jur.2d *Estoppel and Waiver* § 49, at 661 (1966) ("Courts have been reluctant, however, to permit the enforcement, by the application of the doctrine of promissory estoppel, of promises made contemporaneously with a completed contract, evidence of which promises comes within the prohibition of the parol evidence rule.").

**4.** In *Godar,* we relied on the following portion of section 213:

588 N.W.2d at 709. We held "that an employer has a duty to exercise reasonable care in hiring individuals, who, because of their employment, may pose a threat of injury to members of the public." *Id.* This duty was extended to negligent retention and negligent supervision of employees. *Id.*

■ These theories of liability only apply, however, "if all the requirements of an action of tort for negligence exists." Restatement (Second) of Agency § 213 cmt. *a*, at 458. Thus, the torts of negligent hiring, supervision, or training "must include as an element an underlying tort or wrongful act committed by the employee." *Haverly v. Kaytec, Inc.*, 738 A.2d 86, 91 (Vt.1999).

■ Although our appellate decisions have not addressed this component of a claim for negligent supervision, in every Iowa case where section 213 has been applied, the employee who was negligently hired or supervised *wrongfully* inflicted injury on the plaintiff. *E.g., Godar*, 588 N.W.2d at 703 (employee sexually abused student); *D.R.R. v. English Enterprises, CATV*, 356 N.W.2d 580, 582 (Iowa App. 1984) (employee raped tenant of apartment complex). The same is true for the two cases upon which the plaintiff relies for support. *See Pruitt v. Pavelin*, 141 Ariz. 195, 685 P.2d 1347, 1349 (Ariz.Ct.App.1984) (employee defrauded client); *Welsh Mfg. v. Pinkerton's*, 474 A.2d 436, 437 (R.I.1984) (employee stole from client). We conclude, therefore, that an employer cannot be held liable for negligent supervision or training where the conduct that proper supervision and training would have avoided is not actionable against the employee.

Here, Hageman cannot be liable for misrepresentations negligently made to Schoff because he is not in the business of supplying information. *See Freeman*, 516 N.W.2d at 838; *Haupt*, 514 N.W.2d at 910; *Meier*, 454 N.W.2d at 581. Nor, as we have concluded above, can there be any liability based on the theory of promissory estoppel. It follows then that Combined cannot be liable for its failure to prevent the alleged misrepresentations or promises through appropriate supervision and training of Hageman. We hold that the district court correctly granted summary judgment to the defendant on the plaintiff's negligent training and supervision claim.

**AFFIRMED.**