**John GREATBATCH and Carolyn Greatbatch, Plaintiffs–Appellants.**

**v.**

**METROPOLITAN FEDERAL BANK, Defendant–Appellee.**

No. 94–1489.

Court of Appeals of Iowa.

May 30, 1995.

Ronald F. Walker, Knoxville, for appellants.

Diane M. Stahle and Bryan A. Glinton of Davis, Hockenberg, Wine, Brown, Koehn & Shors, P.C., Des Moines, for appellee.

Heard by HABHAB, P.J., and CADY and HUITINK, JJ.

CADY, Judge.

This is an appeal by John and Carolyn Greatbatch from the dismissal of their lawsuit against Metropolitan Federal Bank based on negligent misrepresentation. We affirm the decision of the district court.

The Greatbatchs applied for a residential loan with Metropolitan Federal Bank in July 1992. The loan application signed by the Greatbatchs contained an acknowledgment that the lender made no warranties regarding the property. The bank also provided the Greatbatchs an "individual well and sewer system disclosure statement." This statement indicated there would be no closing on the loan without an acceptable water test or septic certification from the seller.

In September 1992, a bank employee informed the Greatbatchs that the loan was ready to close. The Greatbatchs claim the employee also told them that all inspections and certifications had been completed. The Greatbatchs signed a document at the closing acknowledging responsibility for the inspection of the property and holding the bank blameless for the condition of the property.

They claimed the document was signed in reliance on the bank employee's statement that all inspections and certificates had been completed. No inspection of the well and sewer system was actually performed.

The Greatbatchs later experienced problems with the septic system of the house. They filed a lawsuit alleging the bank negligently misrepresented that a septic sewer certification was done. The bank moved for summary judgment, asserting they owed no duty to the Greatbatchs in supplying information concerning the certification of the septic system.

The district court granted summary judgment, and the Greatbatchs appealed. They claim the bank owed them a duty of care and a jury question was presented whether the duty was breached.

Actionable negligence cannot exist unless the defendant owes the plaintiff a duty of care. *Peters v. Burlington Northern R.R. Co.*, 492 N.W.2d 399, 401 (Iowa 1992). Whether a duty exists to impose an obligation on a defendant to conform to a standard of care for the benefit of the plaintiff is an issue of law for courts to resolve. *See Teunissen v. Orkin Exterminating Co.*, 484 N.W.2d 589, 591 (Iowa 1992). The question, accordingly, may be presented by summary adjudication. *Id.*

Courts search for the existence of a duty in legislative enactments, prior judicial decisions, and legal principles. *Engstrom v. State*, 461 N.W.2d 309, 315 (Iowa 1990). Weight is also given to the pronouncements found in the Restatement (Second) of Torts. *Shaw v. Soo Line R.R. Co.*, 463 N.W.2d 51, 53 (Iowa 1990). Many underlying factors make up the creation of a duty including the nature and extent of the relationship between the parties and the foreseeability of harm. *See, e.g., Knake v. King*, 492 N.W.2d 416 (Iowa 1992); *Bain v. Gillispie*, 357 N.W.2d 47 (Iowa App.1984). In the end, the existence of a duty becomes a policy decision derived from all relevant considerations which guide the law to conclude that a particular person is entitled to be protected from a particular type of harm. *Larsen v. United*

*Fed. Sav. & Loan Ass'n,* 300 N.W.2d 281, 285 (Iowa 1981).

■ It is generally recognized that persons who supply information, in the course of their business or profession, for the guidance of others in their business have a duty to use reasonable care in obtaining or communicating the information. Restatement (Second) of Torts § 552 (1977).[1] The cause of action founded on a breach of this duty is called negligent misrepresentation. *See Ryan v. Kanne,* 170 N.W.2d 395, 402 (Iowa 1969); *Beeck v. Kapalis,* 302 N.W.2d 90, 96–97 (Iowa 1981). The duty has been applied with mixed results in Iowa to a variety of businesses, including lending institutions. Our task is to determine if it applies to the particular circumstances of this case.

Courts not only determine the existence of a duty, they must also frame its scope and range. Although the language of the Restatement (Second) of Torts supports a broad view of the types of businesses covered by the tort,[2] our appellate cases reflect a rather narrow scope. One limitation is that the duty to use reasonable care in supplying information applies only to persons engaged in the business or profession of supplying information to others. *Meier v. Alfa–Laval, Inc.,* 454 N.W.2d 576, 581–82 (Iowa 1990). Without facts to show a person is in the business of supplying information to others, no duty arises. *Id.*

■ No clear guideline exists to define whether a party is in the business of supplying information. On one hand, manufacturers and dealers of merchandise have not generally been considered to be in the business of supplying information. *Id.* Their businesses involve making, selling and servicing products, and any information provided during the course of the business is incidental. *See id.* Similarly, sellers of a business are not themselves in the business of supplying information. *Freeman v. Ernst & Young,* 516 N.W.2d 835, 838 (Iowa 1994). On the other hand, the duty has been readily applied to accountants and investment brokers. *Ryan,* 170 N.W.2d at 403; *McCracken v. Edward D. Jones & Co.,* 445 N.W.2d 375, 382 (Iowa App.1989). These professions directly involve the supply of information.

The banking industry, like many other businesses, falls somewhere in the middle of the spectrum. *Rankow,* 870 F.2d at 364. Banks can provide both informational and noninformational services, and the line between a financial transaction and the information about a financial transaction can be very thin. *Id.*

Our appellate courts have confronted this thin line in dealing with bank cases. In *Larsen,* the tort of negligent misrepresentation was applied to impose a duty upon a lending institution to a home owner. *Larsen,* 300 N.W.2d at 287–88. The case involved the accuracy of an appraisal which the lending institution performed as a part of a loan closing process. *Id.* at 284. The tort was rejected, however, in an action against a bank involving arm's length negotiations of a loan guarantee with a bank customer. *Haupt v. Miller,* 514 N.W.2d 905, 910 (Iowa 1994). For this reason, we believe a case-specific inquiry is necessary to determine whether a particular business or enterprise is in the business of supplying information to guide others in their business transactions.[3] *Rankow,* 870 F.2d at 361.

■ An important factor found in our appellate cases to help determine whether a party is in the business of supplying information is the nature of the transaction. Our

1. This section provides in pertinent part:
   "(1) One who, in the course of his business, profession or employment, ... supplies false information for the guidance of others in their business transactions, is subject to liability for pecuniary loss caused to them by their justifiable reliance upon the information, if he fails to exercise reasonable care or competence in obtaining or communicating the information." Restatement (Second) of Torts § 552.

2. The pertinent portion of the Restatement supporting this view is: "One who, in the course of his business, profession or employment, or in any other transaction which he has a pecuniary interest, supplies false information ..." Restatement (Second) of Torts § 552; *see Rankow v. First Chicago Corp.,* 870 F.2d 356, 363 (7th Cir.1989).

3. We observe but do not address the additional requirement often recognized that the information supplied must also be "for the guidance of others in their relations with *third* parties." *Rankow,* 870 F.2d at 362–63.

**118**

courts distinguish between persons engaged in the business of supplying guidance to others in a nonadversarial capacity and commercial transactions where the parties are dealing at arm's length. *See Freeman,* 516 N.W.2d at 838; *Haupt,* 514 N.W.2d at 910. Thus, whether a bank can be responsible for negligent misinformation depends largely on the nature of the particular transaction involved and the type of information provided. *See Rankow,* 870 F.2d at 361, 364. It is also important to consider whether the information was part of the product provided by the bank, or was central to the business of the bank. *Id.* at 364–65.

In *Larsen,* the product supplied by the savings and loan was more than money to finance the purchase of a home. The lending company actually provided an appraisal to facilitate the loan closing. The appraisal, in the particular transaction, was part of the overall product provided by the savings and loan, which the borrower paid for and reasonably relied upon. The company, under those circumstances, was supplying information in its business.

In this case, we believe the product supplied by the bank was a loan, not information concerning the processing of the loan. The information concerning the inspection certificate was not an additional product supplied by the bank, unlike the appraisal in *Larsen,* but was incidental to the underlying financial transaction. The bank did not assume responsibility for the inspection nor represent to the Greatbatchs that it would do so. We think the situation was in the nature of an arm's length commercial transaction. The bank, in this transaction, was not in the business of supplying information to others.

We have reviewed the pleadings and other matters of record in a light more favorable to the Greatbatchs. We conclude they have failed to make a sufficient claim for negligent misrepresentation. As a matter of law, no duty can be imposed on the bank since it was not in the business of supplying information in the transaction involved.

**AFFIRMED.**