Alan L. BROWN, David Burmester, Don Butson, Steve Hackbarth, Ken Mutschler, Marlyn Tripp, Kurt Wolf, and Maurice Wolf, Plaintiffs/Counterclaim Defendants,

v.

NORTH CENTRAL F.S., INC.,
Defendant/Counterclaim
Plaintiff.

CEBAR FARMS, INC., Barbara Lyon, Jerry Lyon, and James Dean Krabbe, Plaintiffs/Counterclaim Defendants,

v.

NORTH CENTRAL F.S., INC.,
Defendant/Counterclaim
Plaintiff.

Nos. C96–3074–MWB, C96–3080–MWB.

United States District Court,
N.D. Iowa,
Central Division.

July 9, 1997.

Glenn Norris, Hawkins & Norris, Des Moines, IA, for Plaintiffs.

Steven H. Hoeft, McDermott, Will & Emery, Chicago, IL, Edward M. Mansfield, Berlin, Harris, Lamson, McCormick, P.C., Des Moines, IA, for Defendant.

**MEMORANDUM OPINION AND ORDER REGARDING DEFENDANT'S MOTION TO DISMISS COUNTS II–VII OF THE AMENDED AND SUBSTITUTED COMPLAINT**

BENNETT, District Judge.

## TABLE OF CONTENTS

I. INTRODUCTION ................................................................. 661
 A. The Cases ................................................................. 661
 B. The Prior Ruling ........................................................... 662
 C. The Amended And Substituted Complaints ................................. 663

II. LEGAL ANALYSIS
 A. Applicable Standards ................................................................. 664
 B. The Repleaded Fraud Claims ......................................................... 666
 1. Speaker and recipient ........................................................... 666
 2. Time, place, and manner ........................................................ 667
 3. Content of misrepresentations .................................................. 669
 4. Falsity and knowledge thereof .................................................. 669
 5. The fraud pleadings as a whole ................................................. 671
 C. Adequacy Of Unaltered Claims ....................................................... 672
 1. Negligent misrepresentation .................................................... 672
 2. Breach of contract .............................................................. 673
 D. Dismissal Or Leave To Replead Fraud Claims ........................................ 674
III. CONCLUSION ........................................................................... 675

Failure to plead fraud with particularity is the *idée fixe* of the defendant grain elevator's motion to dismiss in each of two lawsuits involving so-called "hedge-to-arrive" contracts (HTAs) for the sale and purchase of grain.[1] Indeed, that theme has been heard before in these two lawsuits, with the result that the grain producer's fraud claims pursuant to the Commodity Exchange Act (CEA), 7 U.S.C. §§ 1–25, have once before been dismissed as failing to meet the "particularity" requirements of *Fed.R.Civ.P.* 9(b). *See North Central F.S., Inc. v. Brown,* 951 F.Supp. 1383 (N.D.Iowa 1996). Although the plaintiffs were granted leave to replead not only their CEA fraud claims, but also their pendent common-law claims of fraud, negligent misrepresentation, and breach of contract, the defendant contends that all but one of the claims in each of the amended and substituted complaints remain woefully inadequate.[2] The plaintiffs contend that they have complied not only with Rule 9(b), but have repleaded their fraud claims to address the shortcomings identified by the court, as well as adequately repleading their other claims. Thus, the question before the court is whether the plaintiffs' rewritten and reorchestrated claims now sound sufficiently clearly to receive a hearing.

## I. INTRODUCTION

### A. The Cases

These two cases have not been formally consolidated in any way. Rather, the court and the parties, represented by the same counsel in each case, have recognized the near identity of issues presented. Therefore, for the sake of convenience, the court conducted a joint hearing on the motions to dismiss in each case on July 1, 1997,[3] and now files a single opinion.

---

1. An "idée fixe," so my law clerk who once studied music history tells me, is "a recurring musical theme or phrase, representing a person or idea, in a large musical composition. The prime example of an idée fixe is the haunting clarinet theme for 'the beloved' in Hector Berlioz's *Symphonie fantastique,* which returns in slightly different character in each movement, thereby suggesting the different moods of 'the beloved' herself or the composer's different attitudes towards her. In common usage in French, 'idée fixe' also has the sense of 'an obsession.'" For those persons not inclined simply to take my law clerk's word for it, he suggests recourse to The New Harvard Dictionary Of Music 389 (Don Michael Randel, ed.1986), the Concise Oxford Dictionary Of Music 59 (2d ed.; John Owen Ward, ed., 1964), Langenscheidt'S Standard Dictionary Of The French And English Languages 253 (Kenneth Urwin, ed., 1968), and a really good recording of Berlioz's *Symphonie fantastique,* preferably by a French orchestra using period instruments.

2. The elevator has not challenged the grain producers' declaratory judgment claim concerning the legality or illegality of the HTAs under the CEA on any Rule 12 ground in the motions to dismiss presently at issue, even though, in a number of rulings in lawsuits involving HTAs, this question or the court's subject matter jurisdiction over it have been at center stage. The parties here are apparently content that the central question of the legality or illegality of the HTAs under the CEA is adequately pleaded and properly before the court, and instead focus their attention on whether *tangential* claims are adequately pleaded. The court is also satisfied that it has subject matter jurisdiction over these actions on the basis of the CEA fraud claims. *See North Central F. S., Inc.,* 951 F.Supp. at 1412.

3. At the oral arguments, the Producers were represented by counsel Glenn Norris of Hawkins & Norris, in Des Moines, Iowa. The Elevator was represented by counsel Steven H. Hoeft, who argued the case, of McDermott, Will & Emery in Chicago, Illinois, and local counsel Edward M. Mansfield of Belin, Harris, Lamson, McCormick, P.C., in Des Moines, Iowa.

North Central F.S., Inc. (the Elevator), filed the first of these actions, Case No. C96–3074–MWB, on August 20, 1996, by filing a complaint for declaratory judgment and other relief against grain producers Alan L. Brown, David Burmester, Don Butson, Steve Hackbarth, Ken Mutschler, Marlyn Tripp, Kurt Wolf, and Maurice Wolf. The second of these actions, Case No. C96–3080–MWB (the CeBar Farms Case), which also seeks declaratory judgment and other relief, was filed against the Elevator on September 10, 1996, by another group of grain producers, CeBar Farms, Inc., Barbara Lyon and Jerry Lyon, who are the principals of CeBar Farms, and James Dean Krabbe. In its prior ruling on December 23, 1996, among other things, the court directed that, in order to obtain jurisdiction over the Elevator's claims as compulsory counterclaims in Case No. C96–3074–MWB, the parties in that case should be realigned. *North Central F. S., Inc.*, 951 F.Supp. at 1411–12. Therefore, with the filing of the grain producers' amended and substituted complaint in Case No. C96–3074–MWB, the grain producers are now the plaintiffs in both actions (collectively, the Producers), and Case No. C96–3074–MWB will be referred to herein as the Brown Case.

The court described in its prior ruling the background of these cases and the claims and counterclaims of the parties as they were then aligned. *See North Central F. S., Inc.*, 951 F.Supp. at 1386–88. Suffice it to say here that the nature of the claims has not changed with the realignment of the parties. Thus, in each case, the Producers' Count I is an action for declaratory judgment, seeking a declaration that the HTAs are illegal futures contracts in violation of the CEA; Count II is a claim for fraud in violation of section 4b of the CEA, 7 U.S.C. § 6b, and seeks rescission as the principal remedy; Count III is again a claim of fraud in violation of section 4b of the CEA, 7 U.S.C. § 6b, but this count seeks damages as the principal relief; Count IV is a common-law claim of fraudulent misrepresentation seeking rescission or cancellation of the contracts as relief; Count V is another common-law claim for fraudulent misrepresentation, but this count seeks damages, both actual and punitive, as relief; Count VI asserts negligent misrepresentation against the Elevator, and seeks as relief actual and punitive damages; and Count VII

is a cause of action for breach of contract. The Elevator has moved to dismiss Counts II through VII in each of the Producers' amended and substituted complaints on the ground that each of these counts fails to state a claim upon which relief can be granted.

### B. The Prior Ruling

In its ruling of December 23, 1996, the court found, *inter alia*, that the CEA fraud claims had not been pleaded with sufficient particularity. *North Central F. S., Inc.*, 951 F.Supp. at 1408–09. Specifically, this court wrote,

Although the Producers' allegations of fraud do attribute several misrepresentations specifically to Vic Stedding, those allegations, even generously read, are of the import, not the specific content, of those misrepresentations. Furthermore, ... the court finds that the allegations of fraud here ... are based on conclusory allegations that an agent of a defendant made misrepresentations to unidentified persons, possibly including the plaintiffs or some of the plaintiffs. In [a prior, unrelated decision], this court found such uncertainty, not only as to who made the alleged misrepresentations, but to whom they were made when multiple plaintiffs were involved, made the allegations of fraud insufficient under Rule 9(b).

The allegations of fraud here suffer from other defects as well. Although the Producers suggest that the time and place of alleged misrepresentations can be derived by inference from the time at which the HTAs were executed, the *pleadings* themselves do not even give rise to the requested inferences of time or place, and the court concludes that, even if they did, inferences do not fulfill Rule 9(b)'s requirements of pleading with particularity. Perhaps most fatal to the pleadings here, however, is that why the statements were allegedly fraudulent is left entirely to inferences based on suggestions of the content of those statements. Although the Producers allege the falsity of the alleged misrepresentations, at least in conclusory fashion, nowhere do they allege specific facts that make it reasonable to believe

that defendants knew that the statements were materially false or misleading. Such pleadings are tantamount to "conclusory allegations, that a defendant's conduct was fraudulent and deceptive" which "are not sufficient to satisfy the rule." Thus, the Producers' fraud claims have not been pleaded with the particularity required by *Fed.R.Civ.P.* 9(b).

*North Central F. S., Inc.*, 951 F.Supp. at 1408–09 (citations and footnote omitted).[4] The court then addressed the impact of these conclusions concerning the CEA fraud claims upon the need to consider the adequacy of the pleading of other claims:

> The court also finds that it need not consider at this time the Elevator's challenges pursuant to *Fed.R.Civ.P.* 12(b)(6) to the adequacy of other claims asserted by the Producers, because repleading of the CEA fraud claims, either by amendment or by refiling, is necessary in both cases. The court anticipates that, in addition to repleading the claims upon which the court finds its subject matter jurisdiction may properly be founded, the Producers will replead their other claims in light of the Elevator's challenges.

*North Central F. S., Inc.*, 951 F.Supp. at 1409 (citations and footnote omitted).[5] The court therefore granted the Elevator's motion to dismiss in each case to the extent that it found the claims of fraud inadequately pleaded under *Fed.R.Civ.P.* 9(b) and 12(b)(6), and to the extent that the Producers were directed, within sixty days, to "file an amended complaint adequately pleading fraud pursuant to *Fed.R.Civ.P.* 9(b) and this court's direction." *Id.* at 1412–13. Furthermore, the court held, "in the interest of economy to the parties and the court, such an amended complaint, may also rectify any inadequacies perceived in the pleading of other claims." *Id.* at 1413.

### C. The Amended And Substituted Complaints

In response to the court's order of December 23, 1996, the Producers filed amended and substituted complaints in each action on March 3, 1997. The amended complaints track with remarkable consistency the original counterclaim of the Producers in what is now known as the Brown Case and the claims of the Producers in the CeBar Farms Case. Thus, what is new in each complaint is readily ascertainable. There are incidental changes in the Brown Case, resulting from the realignment of the Producers as the plaintiffs and the recasting of what were formerly counterclaims as claims of the realigned plaintiffs in the complaint in that action. Other additions or amendments in each amended complaint are of greater significance.

In response to the present motion to dismiss their fraud claims, as they did in response to the prior motion, the Producers point to the general factual allegations section as fulfilling in part the particularity requirements of *Fed.R.Civ.P.* 9(b). To those general factual allegations in the amended and substituted complaint in the Brown Case, the Producers have made additions to only ¶ 28. Those additions are as follows:

> It is believed that the short sales of corn futures made by North Central on the Chicago Board of Trade do not correspond directly to any trades designated in the Hedge to Arrive Contracts with the Plain-

---

4. In a footnote to the December 23, 1996, ruling, this court also observed,

> Logically, for a person to have been induced to contract by fraud, that person himself or herself must have been the victim of the materially false statements and those statements must have induced entry into the particular contract in question. The pleading of fraud in these cases simply does not allege which person was the recipient of' which allegedly false statements in what relationship to which contracts.

*North Central F. S., Inc.*, 951 F.Supp. at 1408 n. 18. This statement bears repeating, if again only in a footnote.

5. In another footnote in the December 23, 1996, decision, the court also observed,

> Furthermore, to the extent the Producers' common-law fraud claims in Counts IV and V of their complaint or counterclaim rely on the same fraud allegations as Counts II and III, they are also inadequate under Rule 9(b). To the extent that the Producers should establish that the HTAs in question are within the purview of the CEA, the common-law fraud claims may be preempted by the CEA pursuant to 7 U.S.C. § 25.

*North Central F.S., Inc.*, 951 F.Supp. at 1409 n. 19.

tiffs. It is further believed that at some time prior to the institution of this lawsuit, North Central made offsetting long trades of corn futures on the Chicago Board of Trade and is attempting to charge the Plaintiff with losses from such offsetting trades, notwithstanding that the short positions did not bear an exact correspondent to the trades described in the Hedge to Arrive Contracts.

The Brown Case, Amended And Substituted Complaint, ¶ 28. No comparable change was made to ¶ 25 of the CeBar Farms complaint. However, the additions to ¶ 28 in the Brown Case do not add any additional clarification of the time, speaker, recipient, or content of the alleged misrepresentations. Thus, as the court observed with regard to the prior versions of the complaints, any allegations of misrepresentations and the persons making those misrepresentations are alleged only generally in ¶¶ 18 and 19. *North Central F.S., Inc.*, 951 F.Supp. at 1406 & n. 17. Almost all of these allegations are of "affirmations and confirmations," without specific identification of the times at which these "affirmations and confirmations" were made to individual plaintiffs. *Id.* The court will consider below whether the additional allegations in ¶ 28 of the amended and substituted complaint in the Brown Case sufficiently allege either the falsity of the alleged misrepresentations or the Elevator's knowledge of such falsity.

More substantial amendments are found in the factual allegations in each count of each amended and substituted complaint. To Counts II and III, the Producers have added a new ¶ 4, with subparts pertaining to each of the plaintiffs. These additions appear to be the Producers' attempts to allege with greater specificity facts concerning the content and context of misrepresentations purportedly made to each plaintiff. Identical or nearly identical additions are made to ¶ 3 of Counts IV and V in each amended complaint. These additions, as they become relevant to the present discussion, will be discussed more fully in this ruling.

There are no additions in each amended complaint to the allegations in Count VI, the negligent misrepresentation claim, or to the allegations in Count VII, the breach of contract claim, apart from incidental changes in the Brown Case in the identification of parties resulting from their realignment. Thus, the Producers in both cases stand on the adequacy of their original allegations on these last two claims, despite the Elevator's previous and present assertions of defects and the court's invitation to address any defects in an amended complaint.

The court turns next to its legal analysis of the adequacy of the amended claims, beginning with the standards by which the adequacy of the amended complaints will be determined.

## II. LEGAL ANALYSIS

### A. Applicable Standards

The present motions to dismiss involve the interrelationship of two sets of standards: The standards for dismissal for failure to state a claim upon which relief can be granted pursuant to *Fed.R.Civ.P.* 12(b)(6), and the standards for pleading fraud with particularity stated in *Fed.R.Civ.P.* 9(b). The court reviewed each of these sets of standards in some detail in its December 23, 1996, order. *See North Central F. S., Inc.*, 951 F.Supp. at 1404 (Rule 12(b)(6)) & 1407–08 (Rule 9(b)). The court does not find that intervening decisions have altered these standards in any way, nor, with but one exception discussed below, does it appear that the parties disagree with the standards stated by the court or assert that additional principles are applicable.

That exception is the Producers' reliance on *McDonnell Douglas Corp. v. SCI Tech., Inc.*, 933 F.Supp. 822 (E.D.Mo.1996), for the proposition that Rule 9(b) does not require the pleading of all of the details concerning who made allegedly fraudulent misrepresentations, to whom the representations were made, when the representations were made, whether the representations were made, whether the representations were oral or in writing, and the accompanying circumstances. Plaintiff's Joint Brief In Resistance To Defendant's Second Motion To Dismiss (Plaintiff's Resistance Brief), pp. 17–18 (quot-

ing *SCI Tech., Inc.*, 933 F.Supp. at 825). The court in *SCI Tech., Inc.*, wrote,

> Rule 9(b) does not require that details concerning each of these points be pleaded, as the rule is harmonized with the general principle of Rule 8 that a party need only plead a "short and plain statement" of a claim. *Fed.R.Civ.P.* 8(a); *see Craighead v. E.F. Hutton & Co., Inc.*, 899 F.2d 485, 491 (6th Cir.1990); *[United States ex rel.] O'Keefe [v. McDonnell Douglas Corp.]*, 918 F.Supp. [1338,] 1345 [ (E.D.Mo.1996) ]. To plead fraud with sufficient particularity, however, the identity of the person making the misrepresentation and the time and place thereof must be pleaded in addition to the content of the misrepresentation. *Bennett [v. Berg]*, 685 F.2d [1053,] 1062 [ (8th Cir.1982), *cert. denied*, 464 U.S. 1008 [104 S.Ct. 527, 78 L.Ed.2d 710] (1983) ].

*SCI Tech., Inc.*, 933 F.Supp. at 825.

■ This court must respectfully disagree with any suggestion that Rule 9(b) is to be "harmonized" with the "short and plain statement" pleading requirement of Rule 8. To the contrary, in this court's view, Rule 9(b) is a special pleading rule supplanting the requirements of Rule 8 in cases of "fraud, mistake, [and] condition of the mind," which specifically requires that *"the circumstances constituting fraud* or mistake *shall* be stated with particularity [although] [m]alice, intent, knowledge, and other condition of mind of a person may be averred generally." *Fed. R.Civ.P.* 9(b) (emphasis added). As this court observed in both *DeWit v. Firstar Corp.*, 879 F.Supp. 947 (N.D.Iowa 1995), and the prior decision in this case, Rule 9(b) clearly imposes obligations additional to those stated in *Fed.R.Civ.P.* 8, which establishes notice pleading. *DeWit*, 879 F.Supp. at 989–90 (citing *In re GlenFed, Inc., Securities Litigation*, 42 F.3d 1541, 1547 (9th Cir. 1994)); *see also North Central F.S., Inc.*, 951 F.Supp. at 1407 (quoting *DeWit* ). The guiding principle is that the statement of a fraud claim must aver with particularity the circumstances constituting the fraud. *North Central F.S., Inc.*, 951 F.Supp. at 1407 (quoting *DeWit*, in turn citing *In re GlenFed, Inc.*, 42 F.3d at 1547, and 5 CHARLES A. WRIGHT & ARTHUR R. MILLER, FEDERAL PRACTICE AND PROCEDURE § 1297, at 615 (1990)). In other words, Rule 9(b) "is a special pleading requirement and contrary to the general approach of simplified pleading adopted by the federal rules ... " 5 C. WRIGHT & A. MILLER, FEDERAL PRACTICE AND PROCEDURE § 1297, at 615 (1990). Rule 9(b) "would clearly be superfluous if its only function were to ensure that defendants are provided with that degree of notice which is already required by Rule 8(a)." *In re GlenFed, Inc.*, 42 F.3d at 1547.

■ At a minimum, Rule 9(b) requires that allegations of fraud in a complaint must (1) specify the statements that the plaintiff contends were fraudulent; (2) identify the speaker; (3) state where and when the statements were made; and (4) explain why the statements were fraudulent. *Id.* (describing these as "time, place, and content" requirements); *Acito v. IMCERA Group, Inc.*, 47 F.3d 47, 53 (2d Cir.1995); *Mills v. Polar Molecular Corp.*, 12 F.3d 1170, 1175 (2d Cir. 1993) (citing *Cosmas v. Hassett*, 886 F.2d 8, 11 (2d Cir.1989)). Scienter may, within limits, be pleaded in conclusory fashion, but "the complaint must set forth specific facts that make it reasonable to believe that defendant[s] knew that a statement was materially false or misleading." *Lucia v. Prospect Street High Income Portfolio, Inc.*, 36 F.3d 170, 174 (1st Cir.1994) (quoting *Serabian v. Amoskeag Bank Shares, Inc.*, 24 F.3d 357, 361 (1st Cir.1994)). The requirements of Rule 9(b) thus are *different from*, not *in harmony with*, the notice pleading requirements of Rule 8.

■ Furthermore, the degree of particularity of the pleading of fraud depends upon the nature of the transaction or transactions in question, *see id.* at 990; *see also North Central F. S., Inc.*, 951 F.Supp. at 1408, a proposition with which the court in *SCI Tech., Inc.*, did not disagree. *See SCI Tech., Inc.*, 933 F.Supp. at 825 (suggesting that the degree of particularity required by Rule 9(b) depends upon the complexity or simplicity of the transactions and the relationship of the parties). What the adjustment of the requirements of pleading to the transaction in question means in a case involving more than one defendant or more than one agent of a

defendant and multiple plaintiffs bringing suit on the basis of different transactions, is that each plaintiff must allege that he or she was the victim of specific materially false statements in relation to the transaction in which he or she was involved. *See North Central F. S., Inc.* 951 F.Supp. at 1408 & n. 18 (citing *DeWit,* 879 F.Supp. at 990). Thus, the court concludes that the Producers are not relieved of any of the particularity requirements stated in this court's prior ruling in this case.

### B. The Repleaded Fraud Claims

Although the repleaded portions of the fraud claims state allegations of fraud as to each plaintiff in turn, and the parties have also couched their arguments concerning the adequacy or inadequacy of the pleadings in this manner, the court does not find it necessary to go through the pleadings of each plaintiff in detail here. There are eight individual plaintiffs in the Brown Case, and one group of plaintiffs and one individual plaintiff in the CeBar Farms Case, each making separate allegations concerning the context in which they allege they were fraudulently induced to enter into HTAs with the Elevator. However, recurring themes make it possible for the court to discuss in turn various aspects of both complaints, rather than pursuing a painstaking, plaintiff-by-plaintiff discussion.[6]

### 1. Speaker and recipient

With regard to the original complaints, this court found,

> [T]he allegations of fraud here ... are based on conclusory allegations that an agent of a defendant made misrepresentations to unidentified persons, possibly including the plaintiffs or some of the plaintiffs. In [a prior, unrelated decision], this court found such uncertainty, not only as to who made the alleged misrepresentations, but to whom they were made when multiple plaintiffs were involved, made the allegations of fraud insufficient under Rule 9(b).

*North Central F. S., Inc.,* 951 F.Supp. at 1408. Some effort has been made in the amended complaints to rectify these deficiencies.

For example, because the allegations of misrepresentations are now broken down plaintiff by plaintiff, the recipient of each misrepresentation has been properly alleged. Also, using the allegations of Allen Brown as an example, the alleged speaker of each misrepresentation is identified, usually as Vic Stedding, but, for alleged misrepresentations made in April of 1996, as Dan Matheson. The Brown Case, Amended and Substituted Complaint, Count II, ¶ 4(a). Similarly, allegations by other Producers are more specific as to the identity of the speaker and the hearer, and allegations that alleged misrepresentations were made by Vic Stedding "and/or" Dan Matheson or some other representative have been almost entirely eliminated. *See, e.g.,* The Brown Case, Amended And Substituted Complaint, Count II, ¶ 4(b) (David Burmester, recipient, and Vic Stedding, speaker, but adding that this plaintiffs "understandings was [sic] not contradicted by statements from Vic Stedding *or other employees* of North Central F. S., Inc., at any time, until demand for payment was made as described below"; emphasis added), ¶ 4(c) (Don Butson, recipient, and Vic Stedding, speaker, but also adding that Stedding and "other employees" did not contradict this plaintiff's "understandings"), ¶ 4(d) (Steve Hackbarth, recipient, and Vic Stedding, speaker, with the same allegations about no contradictions by other Elevator employees), ¶ 4(e) (Ken Mutschler, recipient, and Vic Stedding, speaker, with the same allegations about no contradictions by other Elevator employees), ¶ 4(f) (Marlyn Tripp, recipient, and Vic Stedding, speaker), ¶ 4(g) (Kurt Wolf, recipient, and Vic Stedding, speaker, with the same allegations about no contradictions by other Elevator employees), ¶ 4(h) (Maurice Wolf, recipient, and Vic Stedding, speaker, with the same allegations about no contradictions by other Elevator employees); The CeBar Farms Case, Amended And Sub-

---

**6.** The court's procedure in reaching its conclusions, however, has necessarily been such a painstaking plaintiff-by-plaintiff analysis.

stituted Complaint, Count II, ¶ 4(a) (for plaintiffs CeBar Farms, Jerry Lyon, and Barbara Lyon, the recipient is identified as Jerry Lyon, and the speaker as Vic Stedding), ¶ 4(b) (James Dean Krabbe, recipient, and "Vic Steding [sic] or Mark Menders (another employee of North Central)" as speakers); *and compare North Central F. S., Inc.,* 951 F.Supp. at 1408 (who said what to whom was insufficiently alleged).

■ The court does not find inadequate allegations of the implication of silence from "other employees" as identification of the speaker of misrepresentations. Plainly, if no one said anything contrary to a person's "understanding," there are no individuals to be identified by name as "speakers" of any "misrepresentation." The important requirement, in the court's view, is that the speaker of an affirmative misrepresentation be identified with particularity. More troubling are the allegations of plaintiff James Dean Krabbe in the CeBar Farms Case with respect to identification of the speaker of any affirmative misrepresentations. *See* The Ce-Bar Farms Case, Amended And Substituted Complaint, Count II, ¶ 4(b). Mr. Krabbe alleges that misrepresentations were made "by Vic Steding [sic] or Mark Menders," but he does not allege that both were present at the same meeting in which the alleged misrepresentations were made, If two employees or agents of the Elevator were present and participating in discussions, which of those two agents actually said what might be insignificant to providing adequate notice of a claim of fraud. *DeWit,* 879 F.Supp. at 990 (the specificity with which fraud must be pleaded depends on the circumstances of the transaction); *see also North Central F. S., Inc.,* 951 F.Supp. at 1408 (same); *SCI Tech., Inc.,* 933 F.Supp. at 825 (same). However, Mr. Krabbe's allegations do include a date restriction, *i.e.,* "shortly before entering into his first 'Hedge to Arrive Contract,' on or about June 9, 1995 . . . ," which to some degree mitigates the failure to identify specifically which agent of the Elevator made a misrepresentation. Because of the date restriction, the Elevator has sufficient notice to defend on the ground that neither agent made any such misrepresentation to the plaintiff on or about the date specified.

However, allegations that "Vic Steding or Mark Menders" made other misrepresentations to Mr. Krabbe "on several occasions" "prior to June 1995" simply are not sufficiently specific, and will not sustain any fraud claim.

Therefore, except where otherwise indicated, the amended pleadings cure the deficiencies of pleading fraud under Rule 9(b) with respect to identification of speakers and recipients of alleged misrepresentations.

### 2. Time, place, and manner

Less specific, but not necessarily less satisfactory, amendments have been made to time, place, and manner allegations. In its prior ruling, the court found as follows:

> The allegations of fraud here suffer from other defects as well. Although the Producers suggest that the time and place of alleged misrepresentations can be derived by inference from the time at which the HTAs were executed, the *pleadings* themselves do not even give rise to the requested inferences of time or place, and the court concludes that, even if they did, inferences do not fulfill Rule 9(b)'s requirements of pleading with particularity.

*North Central F. S., Inc.,* 951 F.Supp. at 1408. Although the place at which the alleged misrepresentations allegedly occurred is, in the case of each plaintiff, now specifically alleged to be at the Elevator in Coulter, Iowa, the specificity of the allegations concerning when such misrepresentations were made and in what manner varies considerably.

Again, beginning with the amended and substituted complaint in the Brown Case, as to Allen Brown, allegations in ¶ 4(a) of Count II, and comparable provisions of the other counts, now specify that certain representations were made to him by Vic Stedding in meetings "on March 14, 1995," and "on or about November 1, 1995," and by Dan Matheson "[i]n April 1996." The Brown Case, Amended and Substituted Complaint, Count II, ¶ 4(a). Other plaintiffs also allege that a specific agent made misrepresentations to them either on specific dates, "on or about" certain dates, or within certain

months. *See id.*, Count II, ¶ 4(b) (plaintiff Burmester alleges that misrepresentations were made to him "on or about October 4, 1994"), ¶ 4(d) (plaintiff Hackbarth alleges that misrepresentations were made to him "on or about November 16, 1995," and "on or about November of 1995"), ¶ 4(e) (plaintiff Ken Mutschler alleges that misrepresentations were made to him "on or about November of 1995" and "on or about January of 1996"), ¶ 4(g) (plaintiff Kurt Wolf alleges that misrepresentations were made to him "on or about December 29, 1993"), ¶ 4(h) (plaintiff Maurice Wolf alleges that misrepresentations were made to him "on or about September 22, 1995"); The CeBar Farms Case, Amended And Substituted Complaint, Count II, ¶ 4(a) (CeBar Farms, Jerry Lyon, and Barbara Lyon allege that misrepresentations were made to Jerry Lyon "[i]n December 1994," "[o]n or about December 28, 1994," and "[i]n July 1995"), ¶ 4(b) (James Dean Krabbe alleges that some misrepresentations were made to him "on or about June 9, 1995"). The sufficiency of these date restrictions obviously range from most adequate to least adequate, but all are probably within the range of pleading necessary to give the Elevator notice of the circumstances of the alleged fraud, particularly where they are coupled with adequate identification of the speaker of the alleged misrepresentation. *DeWit*, 879 F.Supp. at 990 (the specificity with which fraud must be pleaded depends on the circumstances of the transaction); *see also North Central F. S., Inc.*, 951 F.Supp. at 1408 (same); *SCI Tech., Inc.*, 933 F.Supp. at 825 (same).

■ However, others plaintiffs allege only that misrepresentations were made "in the Spring of" a certain year or a similarly broadly identified time frame. *See* The Brown Case, Amended And Substituted Complaint, Count II, ¶ 4(c) (plaintiff Butson, alleges that misrepresentations were made to him "immediately prior to the time he entered into his first 'Hedge to Arrive Contract' in the Spring of 1996"), ¶ 4(f) (plaintiff Tripp alleges that misrepresentations were made to him "[a]t some point in the Spring of 1994," "[d]uring the summer of 1994," "[i]n the summer of 1995," and "[d]uring November or December of 1995," and "[u]pon re-

ceiving the January 12, 1996, letter from NORTH CENTRAL F.S., INC."); The Ce-Bar Farms Case, Amended And Substituted Complaint, Count II, ¶ 4(b) (James Dean Krabbe alleges that some misrepresentations were made to him "[p]rior to June 1995"). Allegations of such wide time frames during which misrepresentations were allegedly made simply do not provide the specificity required by Rule 9(b), because the defendant cannot reasonably identify against what it must defend. Thus, these allegations of fraud are subject to dismissal.

■ Although the inference from the pleadings is that all of the alleged misrepresentations were made orally, what the court finds inadequate about various of the pleadings of the manner in which the alleged misrepresentations were made is their allegations of fraud based on a particular plaintiff's "understanding." For example, plaintiff Allen Brown alleges that he was "told" various things by Vic Stedding, or that Stedding "stated," "recommended," or "advised" various things. The Brown Case, Amended And Substituted Complaint, Count II, ¶ 4(a); *see also id.*, ¶ 4(f) (plaintiff Tripp alleges throughout what he was "told" or "advised" certain things or alleges the content of "comments"); The CeBar Farms Case, Amended And Substituted Complaint, Count II, ¶ 4(a) (alleging throughout what Jerry Lyon, on behalf of himself, CeBar Farms, and Barbara Lyons, was "told," "advised," or "assured"), ¶ 4(b) (plaintiff Krabbe alleges in part what he was "told"). However, Brown also alleges merely that Stedding "led [him] to believe by his words and actions" or that he "understood" various things. *Id.* Similar allegations merely of "understandings" are found in the misrepresentation allegations of other plaintiffs. *See* The Brown Case, Amended And Substituted Complaint, Count II, ¶ 4(b) (plaintiff Burmester alleges only what he "understood," not what was said), ¶ 4(c) (plaintiff Butson alleges that he was "told" that the HTA programs "worked," but otherwise alleges merely what he "understood"), ¶ 4(d) (plaintiff Hackbarth was the recipient of a "comment" from Vic Stedding that the HTA program was "good for the farmer and good for the elevator," but otherwise alleges

merely what he "understood"), ¶ 4(e) (plaintiff Mutschler alleges that he was "told" the HTA program was "a good program" and he was "advised" to continue for up to six years, but otherwise alleges merely what he "understood"), ¶ 4(g) (plaintiff Kurt Wolf was "told" that the HTA program was "a good program," and certain things were "explained" to him, but he also alleges merely that he "understood" other things), ¶ 4(a) (plaintiff Maurice Wolf alleges throughout only what he "understood"); The CeBar Farms Case, Amended And Substituted Complaint, Count II, ¶ 4(b) (plaintiff Krabbe alleges in part only what he "understood" about margins and commissions and about the reasonableness and effect of HTAs).

 The court finds that pleading what a plaintiff "understood" is insufficient,· because fraud will lie only for what a defendant affirmatively misrepresented or failed to disclose while under a duty to make such a disclosure. Indeed, pleadings that merely state what the plaintiff "understood" are tantamount to "conclusory allegations that a defendant's conduct was fraudulent and deceptive" which "are not sufficient to satisfy the rule." *Commercial Property Investments, Inc. v. Quality Inns Int'l, Inc.*, 61 F.3d 639, 644 (8th Cir.1995). Thus, repleaded fraud claims based on "understandings" still fail to meet the particularity requirements of Rule 9(b).

### 3. Content of misrepresentations

Pleadings merely of "understandings" also fail to plead the content of misrepresentations satisfactorily. This court found failure to allege the content of misrepresentations was a fatal flaw in the original pleadings:

> Although the Producers' allegations of fraud do attribute several misrepresentations specifically to Vic Stedding, those allegations, even generously read, are of the import, not the specific content, of those misrepresentations.

*North Central F. S., Inc.*, 951 F.Supp. at 1408. Although some more specific pleadings of the content of specific misrepresentations have been added to the amended complaints, this fatal flaw again is found in any allegation of fraud based merely on what a plaintiff "understood."

### 4. Falsity and knowledge thereof

 In its prior ruling on the original complaints in this matter, this court observed,

> Perhaps most fatal to the pleadings here, however, is that why the statements were allegedly fraudulent is left entirely to inferences based on suggestions of the content of those statements. Although the Producers allege the falsity of the alleged misrepresentations, at least in conclusory fashion, nowhere do they allege specific facts that make it reasonable to believe that defendants knew that the statements were materially false or misleading. Such pleadings are tantamount to "conclusory allegations that a defendant's conduct was fraudulent and deceptive" which "are not sufficient to satisfy the rule." Thus, the Producers' fraud claims have not been pleaded with the particularity required by *Fed.R.Civ.P.* 9(b).

*North Central F. S., Inc.*, 951 F.Supp. at 1408–09 (citations and footnote omitted). The court again finds that this defect attaches to each and every allegation of fraud in the amended complaints.

 The amended complaints retain the conclusory allegation of falsity and knowledge of falsity. *See, e.g.*, The Brown Case, Amended And Substituted Complaint, Count II, ¶ 7; The CeBar Farms Case, Amended And Substituted Complaint, Count II, ¶ 7. However,

> general averments of the defendants' knowledge of material falsity will not suffice. Consistent with *Fed.R.Civ.P.* 9(b), the complaint must set forth specific facts that make it reasonable to believe that defendant[s] knew that a statement was materially false or misleading.

*Lucia v. Prospect Street High Income Portfolio, Inc.*, 36 F.3d 170, 174 (1st Cir.1994) (quoting *Serabian v. Amoskeag Bank Shares, Inc.*, 24 F.3d 357, 361 (1st Cir.1994)); *see also North Central F. S., Inc.*, 951 F.Supp. at 1408 (quoting *DeWit*, 879 F.Supp. at 989–90, in turn quoting *Lucia*, 36 F.3d at 174). Such allegations here remain entirely absent, and thus the pleadings of fraud are

again tantamount to "conclusory allegations that a defendant's conduct was fraudulent and deceptive" which "are not sufficient to satisfy the rule." *Commercial Property Investments, Inc.,* 61 F.3d at 644.

This conclusion is not altered by the addition to the general factual allegations in the Brown Case of allegations concerning a lack of correlation between HTAs and trades on the Chicago Board of Trade. *See* The Brown Case, Amended And Substituted Complaint, ¶ 28. Those additional allegations simply do not go to the defendant's knowledge of the falsity of any alleged misrepresentations concerning the HTAs themselves, even if they go to whether the Elevator actually performed the precise terms of the HTAs. As the Elevator correctly maintains, every breach of a term of a contract does not give rise to a claim of fraudulent misrepresentation; rather, the proper cause of action is a claim for breach of the contract itself.

■ The Producers' arguments in their briefs as to why the misrepresentations were fraudulent also miss the mark. First, the Producers must set forth *in their complaints* specific facts that make it reasonable to believe that the defendant knew that a statement was materially false or misleading. *Lucia,* 36 F.3d at 174 (quoting *Serabian,* 24 F.3d at 361); *see also North Central F.S., Inc.,* 951 F.Supp. at 1408 (quoting *DeWit,* 879 F.Supp. at 989–90, in turn quoting *Lucia,* 36 F.3d at 174). No such factual allegations are to be found in the amended complaints. Arguments in briefs are no substitute for pleading of the requisite facts.

■ Furthermore, the Producers do not assert in their brief that there were facts known to the Elevator or its agents *at the time the alleged misrepresentations were made from* which the Elevator or its agents would or should have known that the representations in question were false or misleading. Instead, the Producers' arguments are based on subsequent events, which the Producers apparently argue somehow demonstrate the falsity of the statements when made and the defendant's knowledge of that falsity when the statements were made. For example, concerning representations that the Elevator would be responsible for commis-

sions and margin calls, one of the alleged misrepresentations, the Producers assert that the statement was fraudulent, because

> [i]n its April 13, 1996, letter to all holders of HTA contracts, North Central announced that the Plaintiffs would have to pay any unfavorable margin on the futures position in order to roll the contract forward. This, in effect, passed on these charges to the producers in direct contradiction of the prior representation. In fact, North Central billed plaintiffs for the margin calls North Central claimed that it had to pay.

Plaintiffs' Joint Brief In Resistance To Defendant's Second Motion To Dismiss, p. 3. As the Elevator rightly contends, assertions that a representation was subsequently breached does not give rise to any inference that the representation was false and known to be false at the time it was made, nor does every breach of contract give rise to a companion fraudulent misrepresentation claim.

■ Also, under Iowa law, a statement of intent to perform a future act is actionable for fraud only if, when made, the speaker had an existing intention not to perform. *Jones Distributing Co., Inc. v. White Consol. Indus., Inc.,* 943 F.Supp. 1445, 1470 (N.D.Iowa 1996) (citing *Robinson v. Perpetual Servs. Corp.,* 412 N.W.2d 562, 565 (Iowa 1987), in turn citing *Hagarty v. Dysart–Geneseo Community Sch. Dist.,* 282 N.W.2d 92, 95 (Iowa 1979), and *Grefe v. Ross,* 231 N.W.2d 863, 867 (Iowa 1975)). There are no allegations in the amended complaints concerning or suggesting that the Elevator had an existing intention not to perform according to the representations regarding the margins or commissions when those representations were made. Similarly, the Producers' explanations of why other statements were allegedly fraudulent also depend upon events that occurred well after the representations in question were allegedly made. *See* Plaintiffs' Joint Brief In Resistance To Defendant's Second Motion To Dismiss, p. 4 (statements that the Producers were only subject to "basis risk" are asserted to be fraudulent, because the Elevator attempted to subject the Producers to moves in corn futures contracts in April of 1996), p. 5 (rep-

resentations that trades would be made for the sellers on the CBOT are asserted to be fraudulent, because the trades were never made for the individual farmers as represented to them), p. 6 (representations about unlimited "rolling" of contracts are asserted to be fraudulent, because a letter of January 12, 1996, stated that the Producers would then be required to designate for which crop year contracts were made), p. 7 (representations concerning ability to "roll" contracts if the Producer was dissatisfied with the contract price are asserted to be fraudulent, because of different terms in the same January 12, 1996, letter).

Again, facts upon which inferences of falsity and knowledge of falsity could be based are not pleaded *in the amended complaints* and the arguments in the Producers' brief are not based on facts contemporaneous with the alleged misrepresentations such that no inference arises as to either falsity or knowledge of falsity at the time the representations were made. Therefore, the amended complaints still fail to allege with particularity either the falsity of the alleged misrepresentations or the defendants' knowledge or notice of such falsity. *Compare North Central F.S., Inc.,* 951 F.Supp. at 1408–09 ("Perhaps most fatal to the pleadings here ... is that why the statements were allegedly fraudulent is left entirely to inferences based on suggestions of the content of those statements.... [N]owhere do [the Producers] allege specific facts that make it reasonable to believe that defendants knew that the statements were materially false or misleading.").

### 5. The fraud pleadings as a whole

Although the court has parsed the pleadings of fraud in terms of four requirements, and found them inadequate or partially inadequate as to each requirement, the court has also considered whether the pleadings of

each plaintiff, taken as a whole, satisfy the particularity requirements of Rule 9(b) in light of the circumstances from which the fraud claims arise. *DeWit,* 879 F.Supp. at 990 (the specificity with which fraud must be pleaded depends on the circumstances of the transaction); *see also North Central F. S., Inc.,* 951 F.Supp. at 1408 (same); *SCI Tech., Inc.,* 933 F.Supp. at 825 (same). Although the court concludes that uncertainties about the time of alleged misrepresentations, for example, might be balanced, in the circumstances, by adequate identification of the speaker of those misrepresentations, and vice versa, no amount of particularity as to other circumstances of fraud can mitigate the deficiency in pleading knowledge of falsity. Therefore, even a liberal reading of the fraud claims in their entirety fails to establish that they are pleaded with the particularity required by Rule 9(b).

Because some deficiencies in the fraud pleadings previously identified have been at best only partially rectified in the amended and substituted complaints, and a matter encompassing all of the fraud claims, the defendant's knowledge of falsity, is still inadequately pleaded, all of the fraud claims are subject to dismissal pursuant to *Fed.R.Civ.P.* 12(b)(6).[7] The Elevator contends that such dismissal should this time be with prejudice, because the Producers have now had two bites at the apple to plead fraud adequately, and it is unfair to keep inadequately pleaded fraud claims hanging over the Elevator's head.

In the previous ruling, this court reiterated its rejection of the notion that a party putting forward inadequate pleadings must automatically be given leave to amend when the court finds that the opposing party's Rule 12(b)(6) motion should be granted. *See North Central F. S., Inc.,* 951 F.Supp. at 1409 (citing, *inter alia, DeWit v. Firstar Corp.,* 904 F.Supp. 1476, 1502–05 & n. 21

---

7. The court also finds considerable merit in the Elevator's further arguments that the CEA fraud counts fail to state claims upon which relief can be granted—arguments that these claims fail to allege that the Elevator acted "for or on behalf" of the Producers as required for a fraud claim under the CEA, and arguments that the Producers have failed to allege that they sustained any

cognizable damages. However, because the court concludes that the CEA fraud claims are inadequately pleaded under the standards imposed by *Fed.R.Civ.P.* 9(b), the court does not find it necessary to analyze in detail these further assertions that the CEA fraud claims are inadequately pleaded.

(N.D.Iowa 1995)). The court is still more reluctant to grant leave to attempt *a further* amendment of claims already once dismissed as inadequate and still deficient upon re-pleading. The court specifically identified the deficiency in the pleading of knowledge of falsity in its prior ruling, and plaintiffs have made no attempt whatsoever to rectify that deficiency. However, if the court finds that other challenged claims are viable, and thus the action will continue on other claims, the court doubts that there will be any real prejudice to the Elevator if the Producers are given one *final* opportunity to attempt to replead their fraud claims. Therefore, before determining whether or not to dismiss the fraud claims with prejudice, or simply to require a further repleading of those claims, the court must consider the adequacy of the pleading of other claims.

### C. Adequacy Of Unaltered Claims

The court did not reach the adequacy of the pleading of other claims in its prior disposition of the Elevators' motions to dismiss, because it found that dismissal and repleading of the CEA fraud claims, upon which the court's subject matter jurisdiction depended, was necessary. *See North Central F. S., Inc.,* 951 F.Supp. at 1409. This time, however, the court will consider the adequacy of the pleading of these claims, as well.

#### 1. Negligent misrepresentation

The first of the claims the court did not reach in its prior ruling are the claims of negligent misrepresentation. The Elevator contends that the negligent misrepresentation claims must be dismissed, because the Elevator was not in the business of supplying information as required to sustain the tort under Iowa law. The Producers counter that investment advice can give rise to a cause of action for negligent misrepresentation, citing *McCracken v. Edward D. Jones & Co.,* 445 N.W.2d 375 (Iowa.Ct.App.1989).

Under Iowa law, in order to sustain a claim of negligent misrepresentation, the defendant must be one who is "in the business of supplying information." *Fry v. Mount,* 554 N.W.2d 263, 265 (Iowa 1996). The court, not the jury, decides whether defendants were "in the business of supplying information" as a matter of law, in light of the facts, because the defendants' duty is always a matter for the court to decide. *See, e.g., Fry,* 554 N.W.2d at 265 (in a negligent misrepresentation case, the court wrote, "Whether such a duty exists is always a question of law for the court."); *Greatbatch v. Metropolitan Fed. Bank,* 534 N.W.2d 115, 116 (Iowa.Ct.App.1995) (in a negligent misrepresentation case, the court wrote, "Whether a duty exists to impose an obligation on a defendant to conform to a standard of care for the benefit of the plaintiff is an issue of law for courts to resolve"); *Leonard v. State,* 491 N.W.2d 508, 509 (Iowa 1992) (in a case involving the duty of a mental hospital to a person subsequently injured by a patient released from the hospital, the court wrote, "Whether, under a given set of facts, such a duty exists is a question of law."). Although the Iowa Supreme Court has indicated that "professional purveyors" of information, such as accountants, abstractors, or attorneys, whose product is information, often are "in the business of supplying information," *Fry,* 554 N.W.2d at 265, these are not the only categories of persons against whom the claim will lie.

The claim may also be pursued where the defendant provided information as "part of the overall product." *See Greatbatch,* 534 N.W.2d at 118 (distinguishing cases where information is supplied as "part of the overall product," and the defendant was thus "in the business of supplying information," from cases in which the information was merely "incidental to the underlying ... transaction," and the defendant therefore was not subject to a negligent misrepresentation claim). Here, the Elevator and its agents are alleged to have advised the Producers on appropriate means to market their grain to the best advantage, to have assisted in the development of the Producers' "marketing plans" for their grain, and to have held themselves out as experienced in the use of marketing tools such as HTAs. *See, e.g.,* The Brown Case, Amended And Substituted Complaint, ¶¶ 14–17; The CeBar Farms Case, Amended And Substituted Complaint, ¶¶ 10–13. As alleged, therefore,

the information concerning HTAs supplied by the Elevator and its agents was part of, not incidental to, the purchase of grain from the Producers. *Cf. Greatbatch,* 534 N.W.2d at 118.

Furthermore, the transactions in question here were not simply "arm's length" transactions, because the information about HTAs was given to guide grain producers like the plaintiffs in the choice of appropriate marketing methods; *i.e.,* the transaction was more than just a sales negotiation. *See Freeman v. Ernst & Young,* 516 N.W.2d 835, 838 (Iowa 1994); *Haupt v. Miller,* 514 N.W.2d 905, 910 (Iowa 1994).

Thus, as alleged in the amended complaints, the defendant was "in the business of supplying information." Consequently, the negligent misrepresentation claims should not be dismissed, because it does not appear beyond doubt that the Producers can prove no set of facts in support of their claims of negligent misrepresentation that would entitle them to relief. *Handeen v. Lemaire,* 112 F.3d 1339, 1347 (8th Cir.1997) (quoting *Hishon v. King & Spalding,* 467 U.S. 69, 73, 104 S.Ct. 2229, 2232–33, 81 L.Ed.2d 59 (1984)); *accord Conley v. Gibson,* 355 U.S. 41, 45–46, 78 S.Ct. 99, 101–102, 2 L.Ed.2d 80 (1957) ("A complaint should not be dismissed for failure to state a claim unless it appears beyond doubt that the plaintiff can prove no set of facts in support of his [or her] claim which would entitle him [or her] to relief."); *Doe v. Norwest Bank Minn., N.A.,* 107 F.3d 1297, 1304 (8th Cir.1997) (dismissal is appropriate only if " 'it appears beyond doubt that the plaintiff can prove no set of facts which would entitle the plaintiff to relief,' " quoting *Coleman,* 40 F.3d at 258); *WMX Techs., Inc. v. Gasconade County, Mo.,* 105 F.3d 1195, 1198 (8th Cir.1997) ("Dismissal should not be granted unless it appears beyond a reasonable doubt that the plaintiff can prove no set of facts that would entitle relief," citing *Conley,* 355 U.S. at 45–46, 78 S.Ct. at 101–102).

### 2. *Breach of contract*

The other claims the court did not consider in its prior ruling are the Producers' breach-of-contract claims. The Elevator contends that the breach-of-contract claims are inadequate, because the Producers have failed to *allege* the terms and conditions of their HTA contracts, instead asserting breach of two covenants that purportedly are part of the HTA contracts. The Elevator argues further that the Producers' conclusory allegations that they performed the contracts is contradicted by their pleading, in ¶ 23, that they repudiated the HTA contracts, and that the Producers have alleged no damages as the result of any alleged breach. The Producers respond that breach of covenants that form part of a contract will sustain a breach-of-contract action under Iowa law and that their claim that they have suffered damages as the result of the breach is sufficient to sustain the claim under notice pleading rules.

As the Producers correctly state, the Iowa Supreme Court has recognized that a covenant with a customer that it will follow certain rules establishes a contractual duty to the customer and an action will lie for breach of that contractual duty. *Iowa Grain v. Farmers Grain & Feed Co., Inc.,* 293 N.W.2d 22, 25 (Iowa 1980). In their brief, the Producers assert that there was in the HTAs a covenant to adhere to the rules of the Chicago Board of Trade. However, the breach-of-contract claim as pleaded in each case does not rely on any such contractual duty. Rather, the covenants allegedly breached in each case are (1) "a covenant by NORTH CENTRAL that it would be responsible for commission and margin requirements of the transaction," The Brown Case, Amended And Substituted Complaint, Count VII, ¶ 3; The CeBar Farms Case, Amended And Substituted Complaint, Count VII, ¶ 3; and (2) "a covenant by NORTH CENTRAL that if the Plaintiffs were dissatisfied with the price they were to receive under the Contracts they could 'roll' the Contracts into a deferred month and sell the grain otherwise committed to contract on the open market." The Brown Case, Amended And Substituted Complaint, Count VII, ¶ 4; The CeBar Farms Case, Amended And Substituted Complaint, Count VII, ¶ 4. Thus, the *Iowa Grain* case is simply inapposite.

Nonetheless, the court concludes that, under the notice pleading requirements of *Fed.*

R.Civ.P. 8 and the motion to dismiss standards of Fed.R.Civ.P. 12(b)(6), the Producers have sufficiently alleged claims of breach of contract. They have alleged the terms of the contracts they allege were breached, the manner in which they were breached, and that the Producers "have suffered damages" as a result. The Brown Case, Amended And Substituted Complaint, Count VII, ¶¶ 3–7; The CeBar Farms Case, Amended And Substituted Complaint, Count VII, ¶¶ 3–7. Thus, the Producers have pleaded "a short and plain statement of the claim showing that the pleader is entitled to relief" and "a demand for judgment for the relief the pleader seeks." Fed.R.Civ.P. 8(a). The Elevator mistakes the required elements to prove a breach-of-contract claim for the requirements of adequately pleading such a claim.

Furthermore, only the CeBar Farms plaintiffs alleged that they gave the Elevator notice that they had "elected to rescind" (not repudiated) the HTAs and only after they allege the Elevator had breached the contracts. See The CeBar Farms Case, Amended And Substituted Complaint, ¶ 23. No comparable allegations in The Brown Case can be found. Thus, the court cannot say that it appears beyond doubt that the Producers can prove no set of facts in support of their claims that would entitle them to relief on their breach-of-contract claims. Handeen, 112 F.3d at 1347; accord Conley, 355 U.S. at 45–46, 78 S.Ct. at 101–102; Doe, 107 F.3d at 1304; WMX Techs., Inc., 105 F.3d at 1198. The Elevator's motion to dismiss the breach-of-contract claims as inadequate must therefore be denied.

Because viable claims for breach-of-contract and negligent misrepresentation have been pleaded, the court must now return to the question of whether to dismiss the deficiently pleaded fraud claims with prejudice, or instead to allow the Producers one further chance to try to plead fraud with the particularity required by Fed.R.Civ.P. 9(b).

### D. Dismissal Or Leave To Replead Fraud Claims

■ As the court observed above, it rejects the notion that a party presenting deficient pleadings must automatically be given an opportunity to replead claims before the court dismisses their deficient claims outright. See North Central F.S., Inc., 951 F.Supp. at 1409 (citing, inter alia, DeWit v. Firstar Corp., 904 F.Supp. 1476, 1502–05 & n. 21 (N.D.Iowa 1995)). The court is also reluctant to allow parties three opportunities to plead fraud with the particularity required by Fed.R.Civ.P. 9(b), when the court has previously identified deficiencies and those deficiencies have not been rectified, or even addressed, upon repleading. The court also sees substantial merit in the Elevator's arguments that it is unfair to allow the Producers repeated opportunities to replead fraud claims.

■ However, the court concludes that there will be little prejudice to the Elevator if the Producers are granted a further, final opportunity to attempt to plead fraud adequately. This is so, because this action will continue as to other claims, and the proceedings are still on essentially a preliminary procedural footing, The Elevator will have further opportunities to challenge not only the adequacy of repleaded fraud claims, but the opportunity for dispositive motions on the merits of such claims. Therefore, the court will, hesitantly and reluctantly, grant the Producers one last chance to attempt to present adequate pleadings of their fraud claims.

The Producers must understand that the limits of fair opportunities to replead fraud with particularity have been reached. The Elevator's challenges to the fraud claims have thus far been more meritorious than the Producers' defense of those claims and it is through no inadequacy in factual or legal basis for the challenges or inadequacy in advocacy in support of the challenges that the Elevator's request for dismissal with prejudice is denied at this time. Therefore, if the pleading of fraud in the second amended and substituted complaint in each action is challenged and found to be deficient, the court will almost certainly dismiss the fraud claims with prejudice. Furthermore, the Producers' repleading of the fraud claims must address all of the deficiencies identified

by the court.[8] Any deficiencies that reappear in a second amended and substituted complaint will present insuperable bars to continued prosecution of the fraud claims and the resulting dismissal will be with prejudice. *See Frey v. City of Herculaneum,* 44 F.3d 667, 671 (8th Cir.1995) ("[a] motion to dismiss should be granted as a practical matter only in the unusual case in which a plaintiff includes allegations that show on the face of the complaint that there is some insuperable bar to relief"; internal quotations omitted).

### III. CONCLUSION

The court concludes that the Producers' repleaded fraud claims are still deficient under *Fed.R.Civ.P.* 9(b) and those claims are therefore subject to dismissal. However, the court concludes that the Elevator's motions to dismiss must be denied as to the Producers' negligent misrepresentation and breach-of-contract claims. Because viable claims have been asserted, and because this matter is still at the preliminary stages procedurally, the court concludes that little real prejudice to the Elevator will result if the Producers are granted one ***final*** opportunity to attempt to plead fraud with particularity.

Therefore, the Elevator's motion to dismiss hi each case is **denied** as to Counts VI and VII, but granted as to Counts II through V to the extent that the Producers must, *within forty-five (45) days,* file **an amended complaint** adequately pleading fraud pursuant to *Fed.R.Civ.P.* 9(b) and this court's directions.

**IT IS SO ORDERED.**